## Ex parte VINCENT (a slave).

1. A two-storied house of which the front room on the first floor was used as a store-house, and the back room (which also contained a few boxes of goods, and communicated with the front by a door in the partition) as a sleeping room by the owner, while his clerks, who were unmarried men and took their meals at a hotel, slept in the rooms on the second floor,—*held* a dwelling-house, both within the common-law definition of burglary, and under sections 3308-9 of the Code.

2. When words are used in a statute which, when used in reference to the

10

same subject, have obtained a fixed and definite meaning at common law, the inference is that they were intended to be used in their common-law sense.

3. The term "dwelling-house," as used in section 3308 of the Code, has the same meaning as in the definition of burglary at common law ; and the following section (3309) was intended to soften the rigor of the old statute (Clay's Digest, p. 472, § 4), by narrowing the meaning of the term, in requiring that there should be a white person in the house at the time the offence was committed, and that the building should be joined to and parcel of the dwelling-house.

APPLICATION for the writ of *habeas corpus*, or other appropriate process, to obtain the petitioner's discharge from custody in the county jail of Talladega under a charge of burglary.

The petitioner alleges, that he is a slave, the property of Hon. Samuel F. Rice ; that he was arrested, on the 28th of December, 1854, by a constable of said county, under a warrant from a justice of the peace, which was issued on the affidavit of one Samuel Adler that petitioner "did, on or about the 2d day of December, commit the crime of burglary, or break open a store-house the property of said Adler" ; that the said justice, after hearing all the evidence adduced before him, committed petitioner to the county jail, as standing "charged with the crime of burglary" ; that he afterwards made application to the Hon. A. J. Walker, Chancellor of the Northern Chancery Division of the State, to be discharged from custody upon *habeas corpus*, but the said chancellor, after hearing the evidence, remanded the petitioner to jail ; that petitioner, by his counsel, excepted to the ruling of the chancellor in refusing to discharge him, and at his request the chancellor signed and sealed a bill of exceptions, which shows what proceedings were had before him, and which is prayed to be taken as a part of his present petition. This bill of exceptions, as copied into the transcript appended to the petition, is as follows :

"The prisoner, by his counsel, for the purposes of a trial before me, admitted that he did, some four or five weeks ago, a short time before the trial had before the justice of the peace, break into the front room of the house, on the square in the town of Talladega, known as "Adler's store", in the night-time, and took therefrom goods. It was proved, that Samuel Adler and his brother, at the time the house was so broken into, were sleeping in the back room of the said store-house, and

Ex parte Vincent (a slave).

two or three young gentlemen (clerks in the store of Samuel Adler) were sleeping above stairs in the said house; that said house was divided below into two rooms by a partition; that these two rooms were connected together by a door in the partition; that in the front room, which was upon the square in the said town, the said Adler had, at the time said house was broken into, opened a stock of goods, which he was selling at retail, and that in the back room below there were some boxes of shoes, put there in consequence of want of room in the front room; that said Adler and his brother, and the said clerks, were at the said store, engaged in selling goods, and carrying on the trade of retail merchants; that they were so engaged at the time said house was broken into, and some time both before and since, and that they slept there; that Samuel Adler slept in a bed in the back room below, and the clerks above stairs; that they always slept with the door open in the partition between the two rooms, and it was open when the house was broken into; that the said Adlers and their clerks ate at the hotel in said town, except on Sunday mornings, when their meals were usually sent to them from said hotel; that their washing was not done at the said house; that the goods were taken from the front room; that all the said persons were unmarried men; that said house was called in the town, and known, as "Adler's store-house," and that Samuel Adler himself called it his store; that on the trial of said slave two justices of the peace presided, and that they were requested by said slave, through his counsel, to call in the probate judge, and summon a jury, and try the case upon its merits, which they refused to do, and committed said slave to jail to answer an indictment to be preferred at the next term of the Circuit Court of Talladega; that the said Samuel Adler, in the affidavit made to procure a warrant for the arrest of said slave, called the said house 'a store-house.' The witnesses said, that they had not heard said house called a dwelling-house except on this trial. These were all the facts before me as chancellor; and the said slave thereupon, through his counsel, moved for his discharge. I refused to discharge him from imprisonment, and remanded him to jail; and the said slave, by his counsel, excepted."

In the petition presented to this court, it is also alleged

that, " in addition to the evidence set out in said bill of exceptions, there was evidence tending to show that petitioner did not break and enter said store-house."

MORGAN & MARTIN, for the prisoner :

This application is made upon the authority of the following cases: *Ex parte* Edward Stiff, 18 Ala. 464; *Ex parte* Croom & May, 19 *ib.* 561. The question presented is, whether the petitioner is legally imprisoned, and is to be held to answer an indictment to be preferred at the next term of the Talladega Circuit Court, for the offence prescribed in section 3308 of the Code; or, whether the facts, if the evidence is 'sufficient to convict, do not show that he committed the offence prescribed by section 3310. If the evidence shows that he is guilty under the latter section, it was the duty of the justice before whom he was tried and committed, to have associated with himself the judge of probate and another justice, and put the prisoner upon his trial as required by section 3316. This the justice was requested to do, but refused, and committed the prisoner to answer a charge of burglary.

We may concede, that the facts here shown would have amounted to burglary at the common law.—1 Russ. on Cr., p. 784. Our penitentiary code, as found in Clay's Digest, adopts the common law, by simply declaring that " every person who shall commit the crime of burglary," &c.—p. 426, § 64. And in reference to slaves, it also declared that " every slave who shall commit the crime of burglary," &c.—p. 472, § 4. The Code, however, changes the law on that subject as to white persons, and defines specifically what shall amount to burglary in this State.—Code, § 3183. There is, then, in this State, no such crime as burglary as it existed at the common law : the definitions are wholly different, and the punishment is different, even as to white persons. From this the inference is clear, that the Legislature was not satisfied with the law as it was found in our old statute and at common law.— Rutland v. Mindon, 1 Pick. 154. So far, then, as slaves are concerned, there is no such offence as burglary of which they can be guilty.

It is contended, however, that the defendant is guilty of the specific statutory offence defined by section 3308 of the Code.

Ex parte Vincent (a slave).

The term "dwelling-house", in the definition of burglary at common law, has a technical meaning, including adjoining houses, out-houses used in connection with the dwelling, and all other houses within the curtilage ; but it is clear that such is not the strict, literal, or popular meaning of the term.—1 Hayw. 242. The main question here, then, is, In what sense is the term used in this section of the Code? We insist, that it must receive a strict, literal, and popular construction—that it was used in the sense in which it is commonly understood in the community ; because, 1st, such is the well-established rule in the construction of all statutes,—a rule founded upon the common sense of justice to those who are to be governed by the law.—Favers v. Glass, 22 Ala. 624 ; 1 Kent's Com. 461 ; 9 Pick. 285 ; 7 Mass. 523 ; 1 Selden's R. 9. Hence, in the interpretation of ancient statutes, the safest mode is to go back and ascertain in what sense the language in which they are clothed was understood at the time of their adoption.— Smith on Statutes, p. 630, § 482. The great desideratum is, to arrive at the intention of the law-maker ; and, as it is to be presumed that he addressed himself to those who were to be governed by the laws, in language which they would understand, there is no safer mode of arriving at that intention than by ascertaining the meaning given to the language by the people themselves.—Ib. §§ 488, 747, 748. The bare mention of a " dwelling-house" suggests to every mind a house mainly and expressly (not incidentally) intended for the residence of a family—a house withdrawn from the active bustle of business ; a house where the curtains of privacy and retirement are drawn around its inmates, who there instinctively feel a security afforded by no other situation in life ; a house, too, which we approach with a kind of innate reverence and respect. It does not mean a law-office, in which a young man may happen to sleep ; nor a stable, which may be occupied at night by an ostler ; nor a regular retail store, on the public square in a village, in the back room of which a clerk may happen to sleep, and to which the public are invited and solicited to come day and night.

Statutes are not to receive a technical construction, unless it is plainly intended by the Legislature.—8 Pick. 370 ; ib. 514 ; 4 Mass. 471. Modern statutes, even in civil cases, are

to be construed strictly.—Bradley v. Clarke, 5 Durn. & E. 106. Penal statutes are to receive a strict interpretation, in favor of the defendant; general words must be restrained in his favor; because it is better that the courts should fail to punish where the law-makers intended punishment, than that the courts should punish where the law-makers had not intended that it should be done.—Smith on Statutes, pp. 854 to 857; 8 Pick. 370, 514; 4 Mass. 471. And where there is a doubt as to the construction of a statute, it will never be so construed as to create a felony, or to increase the punishment. 3 Mass. 254; 17 ib. 360; 5 Pick. 420.

Again; the Code must be treated as an entire act, and its several parts be construed in pari materia. Every part of a statute must be looked to, in construing any portion of it. 9 Bac. Abr. 239; 4 Gill. & John. 152. Construing the Code thus, it will be found that the offence committed here is fully and entirely covered by a succeeding section (3310). The term "other building", as here used, evidently includes "store-house", and excludes "dwelling-house"; and if the defendant had been proceeded against under this section, he could not have defended on the ground that the proof showed him to be guilty under section 3308. The offences prescribed in these two sections are wholly different; the punishments are different; the courts which try the offender are different. One offence is not included in the other.—7 Mass. 523; 8 Pick. 370. If a store-house had been specifically mentioned in section 3310, it is evident that the proof here would not warrant a conviction under an indictment for breaking and entering a dwelling-house; and yet a store-house would not then have been more clearly included, than it now is under the term "any other building."—Bush v. The State, 18 Ala. 415; Mills v. The State, 20 ib. 86. The Code was intended to introduce a system of statute laws, plain and simple in their character, divested of all technicalities, and speaking what they mean; and such has been the course of construction.—Alabama & Tennessee River Railroad Co. v. Harris, 25 Ala.

The construction for which we contend is reasonable and just, while the opposite is unreasonable and unjust; and when this is the case, the presumption is in favor of the former.—Commonwealth v. Kimball, 24 Pick. 366.

M. A. BALDWIN, Attorney General, *contra* :

1. The question is, Was the store-house a dwelling-house, within the meaning of sections 3308-9 ?  Burglary, as defined by those sections of the Code, does not alter the common-law requirements to constitute that offence, except in this : there must be some white person in such house at the time the offence is committed, and the building must be joined to, and part and parcel of the dwelling-house.

2. The term dwelling-house has a technical meaning, and not that meaning which is attached to it in the common acceptation.  Every house for the dwelling or habitation of man is taken to be a dwelling-house, in which burglary may be committed.  It is not necessary that a family, or any particular number of persons, lodge in or inhabit the house.  Every house in which a man usually sleeps is considered a dwelling by the common law.—3 Humph. 379 ; 1 Hayw. 242; 1 Hale's P. C. 557; 1 Leach 396 ; 1 N. & McC. 583; 1 Hawk. ch. 19, § 18, pp. 133-4-5 ; 4 Black. Com. 225-6 ; 2 East 496 ; 2 Leach 931.  The definition of a dwelling-house in defining the crime of arson (in section 3186) is the correct one—to-wit, "Any house, prison, or other building which is occupied by a person lodged therein at night."

GOLDTHWAITE, J.—The building broken into was a house of two stories, in which one Adler kept goods for sale. The house below was divided into two rooms, communicating by a door in the partition which divided them.  The goods were in the front room, which was used for carrying on the business, and the back room contained a few boxes of shoes, and at and before the time of the breaking was used as a sleeping room by Adler.  The second story was slept in by the clerks of the store, and the proof was, that they were all single men, and took their meals at a hotel in town, except on Sunday, when their breakfasts were usually sent to them ; and that their washing was done away from the house.  The only question upon these facts is, whether the house was a dwelling-house within the meaning of section 3308 of the Code.

At the common law, any house was a dwelling or mansion, in a burglarious sense, in which any person resided, or dwelt ;

and with reference to the offence which could only be committed in the night, we think the true test is, whether it was permanently used by the occupier, or any member of his family, as a place to sleep in.   Thus, if neither the owner, nor any member of his family, slept in the house, it is not his dwelling-house, though he had used it for his meals and all the purposes of his business.—Rex v. Martin, R. & R. 108. So burglary may be committed in a lodging room (1 Leach 89) ; or in a garret used for a workshop and rented together with an apartment for sleeping (1 Leach 237).  So to break and enter a shop not parcel of the mansion house, in which the shop-keeper never lodges, but only works or trades there in the day-time, is not burglary, but only larceny ; but if he, or his servant, usually or often lodge in the house at night, it is then a mansion house in which burglary can be committed.—1 Hale P. C. 557-8.   Indeed, it·is obvious that there could, in general, be no other tests than the one we have mentioned as to single persons, as they could not properly be said to live or dwell in any house in which they did not sleep; and if the house which was permanently used by them for that purpose was not their dwelling-house, they could have none.   We have no doubt, that at the common law, upon the facts as stated, the building must be regarded as the dwelling-house of Adler.

But it is said, that the term dwelling-house, in section 3308 of the Code, is not used in the same sense in which that term is used at the common law with reference to the offence of burglary.   It must be remembered that, at the common law, the crime of breaking into a dwelling-house in the night-time, with the intent to steal or commit a felony, was called burglary (2 East's P. C. 492-3) ; and in view of the mischief to which the crime relates, we have seen that the term "dwelling-house" received a technical signification, differing in some respects from its popular meaning.   By the old law (Clay's Dig. 472, § 4), this offence, when committed by a slave, was punished with death.   By the Code (§ 3308) it is provided, that "every slave who breaks into and enters a dwelling-house in the night, with the intention to steal or commit a felony, must on conviction suffer death" ; and by the following section (3309), that "no building must be deemed a dwell-

ing-house, or any part thereof, unless some white person is in such house at the time the act is done, or the offence committed ; and no building which is not joined to and parcel of such dwelling-house must be considered as included in the preceding section."

If section 3308 stood alone, we should give to the term precisely the same meaning which it bears in burglary proper, for the reason, that the statutory offence would differ in no material respect from the common-law crime.   The same words are used that are found in the definition of burglary as given by the text-books ; and when words are used by the Legislature in relation to a matter or subject which, when used in reference to the same subject at the common law, have obtained a fixed and definite meaning, the inference, we think, is irresistible, that they were intended to be used in their common-law sense.   It would be a strange thing, if the legal sense of "breaking into a dwelling-house in the night-time", meant one thing by the statute, and another by the common law.

If we had, however, any doubt upon the question, it would be dispelled by section 3309.   At the common law, not only the dwelling-house proper, but all other buildings within the curtilage, or some common fence, were deemed part thereof (2 East's P. C. 492-3) : and consequently a barn, stable, kitchen, or smoke-house, although separated from the main building, might be part of the dwelling-house within the meaning of burglary.   But it is evident that neither of these buildings would, in such case, be a dwelling-house in the popular acceptation of that term ; and on the supposition that it was used in that sense in the preceding section, why should the Legislature say it should not apply to certain cases to which it could not apply if used in its popular sense only ? The meaning of the two sections, taken together, is obvious. The old law, which punished capitally every case of burglary when committed by a slave, was regarded as too severe, and, in order to soften its rigor, the meaning of the dwelling-house under the former law was narrowed.   It was required that there should be a white person in the house at the time when the act was committed, and also that the building must be actually joined to and parcel of the dwelling-house.   Subject

to these qualifications, we must construe the term referred to in section 3308 as meaning the same as that term in burglary at the common law.

Motion refused.

RICE, J., not sitting.