195 So. 279

### AVINGER v. STATE.
### 6 Div. 513.

Court of Appeals of Alabama.

Jan. 9, 1940.

Rehearing Denied Feb. 13, 1940.

---

[1] 239 Ala. 2.

[2] 239 Ala. 1.

162

Thos. S. Lawson, Atty. Gen., and Geo. Lewis Bailes, Circuit Sol., and Robt. G. Tate, Deputy Sol., both of Birmingham, for the State.

Beddow, Ray & Jones, of Birmingham, for appellant.

RICE, Judge.

On June 6, 1935, there was approved by the Governor an act of the Legislature (Gen.Acts Ala.Reg.Sess.1935, p. 159), now codified as section 3481(1) of Michie's 1936 Cumulative Supplement to the Alabama Code of 1928, the first paragraph of which reads as follows, to-wit: "Any person who, in the night time, with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house, or any other house or building which is occupied by any person lodged therein, is guilty of burglary in the first degree, and must on conviction be punished at the discretion of the jury, by death or by imprisonment in the penitentiary for not less than ten years."

The indictment under which appellant was tried, convicted, and sentenced to serve imprisonment for a term of fifteen years in the penitentiary consisted of but a single count, which was, omitting formal parts, in words and figures as follows, to-wit: "The Grand Jury of said county charge that, before the finding of this indictment, and subsequent to June 6, 1935, Charlie Avinger, with intent to steal, broke into and entered, in the nighttime, the inhabited dwelling house of R. W. Frawley,

against the peace and dignity of the State of Alabama."

It is without dispute that R. W. Frawley, with his wife, and their bull dog—they seem to have had no children—occupied and lived in adjoining rooms 1004 and 1006 of the Tutwiler Hotel, and had so occupied and lived in said rooms for a period of some several months before the happening of the occurrence giving rise to this prosecution. They either "went out" for their meals, or had them sent to their rooms.

It was likewise without dispute that "in the night time" on a certain night in January, 1939—specifically, before "daylight" on a certain morning—a man was discovered by Mrs. Frawley in one of said rooms, in the act of robbing her purse of a sum of money, under such circumstances that the jury were warranted in finding that he "with intent to steal, broke into and entered, in the night time," one or the other of said rooms, inhabited at the time by R. W. Frawley and his wife.

We think what we have written will serve to make clear the principal question presented by the record on this appeal.

Said question is: Did the rooms in the hotel occupied and lived in by R. W. Frawley and his wife constitute "the inhabited dwelling house" of the said R. W. Frawley, in the sense that those words are used in the Code Section we have quoted, above, and in the indictment under which appellant was tried?

If they did, appellant's duly requested "general affirmative charge" was properly refused. If they did not, there was a fatal variance between the allegations contained in the indictment and the proof offered on the trial; and the jury should have been charged at appellant's request to find him not guilty.

Appellant's astute counsel argue very ably that—and this, so far as we can see—in truth, we hold—is a fact, shown by the undisputed testimony—R. W. Frawley was no other than a regular paying guest at an ordinary hotel. And that hence (they argue) the room, or rooms, assigned to him could not by any interpretation of the language used be considered his "inhabited dwelling house."

We are not sure that the fact that R. W. Frawley appears to have kept his or his wife's bull dog in the rooms where they lived—apparently with the consent of the hotel—made his relation to the hotel any different from that existing between the hotel and any other—and perhaps more transient—guest. So we have concluded to announce our answer to the question we have posed above—*assuming* that Frawley's status, with regard to the hotel, was exactly that of every other guest lodged therein at any time.

And we have decided said question should be answered in the affirmative. We so answer it.

We are, of course, bound to follow the decisions of our Supreme Court. Code 1923, § 7318. And that court, it seems to us, has indicated that our answer should be as we have declared.

In the case of Ex parte Vincent, a Slave, 26 Ala. 145, 62 Am.Dec. 714, the question was as to whether or not the petitioner, Vincent, had broken into and entered a "dwelling house," within the meaning of a Code Section using the term in the same sense the Code Section we have cited above used it. See Code 1852, § 3308. And the Supreme Court in that case used the following language, to-wit: "At the common law, any house was a dwelling or mansion, *in a burglarious sense,* in which any person resided, or dwelt; and with reference to the offence which could only be committed in the night, we think the true test is, whether it was permanently used by the occupier, or any member of his family, *as a place to sleep in.* * * * So burglary may be committed *in a lodging room* ([Rex v. Rogers]; 1 Leach 89); or in a garret used for a workshop and rented together with an apartment for sleeping ([Rex v. Carrell], 1 Leach 237). So to break and enter a shop not parcel of the mansion house, in which the shopkeeper never lodges, but only works or trades there in the day-time, is not burglary, but only larceny; but if he, or his servant, *usually or often lodge in the house at night, it is then a mansion house in which burglary can be committed.*—1 Hale P.C. 557-8. * * * and in view of the mischief to which the crime relates, we have seen that the term 'dwelling-house' *received a technical signification, differing in some respects from its popular meaning."* (Italics supplied by us).

Using the reasoning and holding as quoted from the said case of Ex parte Vincent as a guide for our decision (Code, § 7318, supra) we have no hesitancy in declaring that, as the term is used in Code

Supp.1936,. § 3481(1), the rooms in the hotel occupied and lived in by R. W. Frawley and his wife, and in which the evidence shows they regularly *slept,* and were sleeping at the time of the occurrence giving rise to this prosecution, and which the evidence further shows to be the only home they had, constituted their "inhabited dwelling house." Our conclusion seems to be supported by the decisions in the following cases, to-wit: Adams v. State 13 Ala.App. 330-334, 69 So. 357; Thomas v. State 97 Ala. 3, 12 So. 409; People v. Carr 255 Ill. 203, 99 N.E. 357, 41 L.R.A.,N.S., 1209, Ann.Cas.1913D, 864; Simpson v. State, 5 Okl.Cr. 57, 113 P. 549; Holland v. State 45 Tex.Cr.R. 172, 74 S.W. 763; State v. Johnson 4 Wash. 593, 30 P. 672; State v. Burton 27 Wash. 528, 67 P. 1097.

The evidence, uncontroverted, was that the man who was seen in the room of the Frawleys had on a hat. And that defendant (appellant) was hatless when seen leaving the hotel a few moments later. One method of getting off the tenth floor of the hotel—where were located the Frawleys' rooms—was to descend the steps right by the place where the hat introduced into the evidence was found a short while afterwards.

■ The defendant (appellant) was identified by both Frawley and his wife as the person seen in their room(s). The hat, we hold, was admissible for the purpose of explaining appellant's hatless condition as he left the hotel.

■ But if the above is a wrong conclusion, still we could not affirm error because of the admission of the hat in evidence, for the reason that it appears appellant voluntarily, in the presence of the jury, put the hat on his head for their inspection. And for all we can say they may have found that the hat fit him so perfectly as to indicate clearly that it was his own hat.

■ Manifestly, under the simplest rules of evidence, the hotel keys taken from the person of appellant at the time of his arrest were admitted into the evidence without error. 9 C.J. 1074; James v. State 17 Ala.App. 490, 86 So. 131.

Nor do we find error in any ruling or action made or taken throughout the conduct of the proceedings leading to appellant's conviction.

And the judgment is affirmed.

Affirmed.