38 So.2d 26

### HANNON v. STATE.

#### 5 Div. 267.

Court of Appeals of Alabama.
Nov. 14, 1948.

174

Reneau & Reneau, of Wetumpka, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

CARR, Judge.

The accused is charged under an indictment containing counts of grand larceny and burglary. The jury returned a general verdict of guilt. When this is the situation the verdict will be referred to a good count which is supported by the evidence. Wiggins v. State, 244 Ala. 246, 12 So.2d 758.

There are not any questions presented for our review which relate to rulings during the progress of the introduction of the evidence.

The prime inquiry centers around the action of the trial court in denying the general affirmative charge to the defendant. On this account we will delineate the tendencies of the evidence in some detail.

Without dispute an iron safe weighing about 480 pounds, with its contents, was taken from the storehouse of Mr. Harden. The circumstances under which it was taken clearly establish that there was a breaking within the purview of the statute relating to burglary. The crime occurred during the nighttime. Mrs. Collier, who lived just across the street from the burglarized building, testified that about 2 A. M. she observed a man "putting up the back of this little gate to the truck * * * It was a pick up truck." She saw the truck leave and go in the direction of Wetumpka.

The next morning the officers and others observed, near the front entrance to the building, tracks of a vehicle. Mr. Harden described the tracks as follows:

"There were tire prints and they were very plain and you could even tell the type, the type of tire impress. You could tell that this automobile or whatever it might have been had stopped at this portion here. Those tires were very plain. They were three practically new tires, if not new, and one tire wasn't * * * one tire had a split in the tread where the tread was gone. It was very plain and you could even tell that those tires were general tire treads which is an unusual tire for this part of the country. Of course, there are some here but not too many of them because they are a high priced tire. They are a six inch tread and they are very easy to tear, that is a general tire tread. On the other tire, the slick tire, it had a slit in it I would say eight inches long which was showing too, and very plain * * *"

The safe was later found in a wooded area several miles distant from the store. The contents had been taken after the combination lock had been broken. The safe had been previously painted a black color, and it was observed that portions of its surface contained scratches and broken places to the extent that some of the paint was missing. The car or truck tracks at this location were plain and easy to observe

and were found to be in every respect similar in description to those seen at the store building.

The defendant lived with his father in a dwelling in the near vicinity of Mr. Harden's place of business. He had visited the store from time to time. In fact, his wife had formerly clerked for Mr. Harden.

The father of the defendant owned a Dodge pickup truck. It appears that the accused had the privilege to use the truck at will. His father did not drive at all. According to the testimony of the appellant and his father, when the vehicle was not in use it remained parked in the yard at the back of their home. The ignition key was left hanging to a nail in the rear room of the house.

About a week after the burglary this truck was seen in its accustomed parking place by an employee of Mr. Harden. The tires were observed and the vehicle was taken in custody by the sheriff.

Without detailing the evidence, it is accurate to state that the witnesses described the treads of the tires of the possessed truck to be similar and the same in character as the impressions found both at the store and the wooded section.

Photographs were taken of these tires, and we have these pictures before us. The evidence also disclosed that some flakes of black paint were found in the bed of the truck. Impressions or indentations were seen in the bottom of the bed. These were described in detail. In measurement these corresponded with some dimensions at the base of the safe.

The evidence in defendant's behalf tended to show that the truck had been in general use for several years, during which time stoves, junked automobile parts, other iron scraps, wood, and various articles had been hauled.

It appears that among the articles missing from the safe were a "feeler gauge" and "cotter key." The gauge is a small metal plate about 3 inches in length and ¼ inch in width. It is of the kind that is in general use by mechanics, with which to time gasoline motors. A tool of this description and a cotter key were found among the trash in the body-bed of the truck. Mr. Harden was unable to testify positively that these articles were those that were in his safe. He could only state that in his opinion the feeler gauge was, because it was in every respect identical in appearance.

At about 12:30 on the night in question the appellant, Miss Betty Joe Hood, Mr. McDade and wife came to the latter's home in the Dodge pickup truck after spending most of the evening at some roadside place between Wetumpka and Montgomery. Upon arrival, all except the appellant went into the house, but Mr. McDade forthwith returned and rejoined the defendant at the truck. The appellant testified that the purpose of this second trip was to get a drink of whiskey at his father's home. It appears that the latter's dwelling was in the general vicinity and not very far from McDade's home.

Miss Hood testified that she and Mrs. McDade talked for about fifteen or twenty-five minutes and then retired and were soon asleep. She stated that McDade came back alone later. She could not give the approximate time, but deposed that she was awakened and she knew "he came back in that night."

The effect of the defendant's father's testimony was that his son came home about twelve o'clock, midnight; that upon his arrival he sent him across the road to quiet some negroes who were creating a disturbance; that he was gone about forty-five minutes and then came in the house and went to bed; that his son remained at home the rest of the night.

The appellant testified to like effect and added that McDade accompanied him in the truck to the negro house.

Johnny Hannon, a brother of the accused, testified that when he came home between 1:30 and 2:00 A. M. the same night, he found his brother, Joe, sound asleep.

Mrs. Rose Riddle lived next door to the appellant's father. She testified that during the early morning of the night in question she heard a truck or a car coming in and

out of the back yard near Mr. Hannon's home. She could not fix the time accurately, but stated that it was before the break of dawn and, in her best judgment, about 4:30.

Herein we have endeavored to recite fully and fairly the tendencies of all pertinent evidence disclosed by the record.

We can add very little value to this opinion by citing authorities. Throughout the history of our appellate courts the applicable doctrines have been declared often. Each case presents its own peculiar facts.

■ It is, of course, a legal truism that in all criminal cases the innocence of the accused should be presumed by the court or jury until his guilt is established by the evidence beyond a reasonable doubt and to a moral certainty. This burden upon the State is not in any degree removed in cases where a conviction is dependent upon circumstantial evidence.

"The facts and circumstances in evidence, if dissevered and disconnected, may be weak and inconclusive; but their probative force, when combined, as it was the province of the jury to combine them, under proper instructions from the court, may have satisfied them of the guilt of the defendant." Howard v. State, 108 Ala. 571, 18 So. 813, 815.

■ If the proven circumstances afford a reasonable inference against the innocence of the accused, the general affirmative charge in his behalf is not due to be given. Wilson v. State, 30 Ala.App. 126, 3 So.2d 136.

■ We will not attempt to collate the evidence to the well recognized applicable legal principles. Suffice it for us to state that we have given due and studious consideration to the record, and it is our view that the lower court's action in denying the general affirmative charge must be sustained. The following authorities add support to our conclusion: Wilson v. State, supra; Hargrove v. State, 147 Ala. 97, 41 So. 972, 119 Am.St.Rep. 60, 10 Ann.Cas. 1126; Dickey v. State, 32 Ala.App. 413, 26

So.2d 532; Spurlock v. State, 17 Ala.App. 109, 82 So. 557; Gravette v. State, 25 Ala. App. 347, 147 So. 641; Sampleton v. State, 21 Ala.App. 408, 108 So. 650; Welden v. State, 23 Ala.App. 85, 121 So. 4

■ We will not disturb the judgment of the trial judge in his action in denying appellant's motion for a new trial. Wilson v. State, supra; Freeman v. State, 30 Ala. App. 99, 1 So.2d 917.

■ Charges numbered 3 and 6 which were refused in defendant's behalf are not predicated on the evidence in the case. Edwards v. State, 205 Ala. 160, 87 So. 179; Nix v. State, 33 Ala.App. 603, 36 So.2d 452.

■ Charge number 4 was properly refused. Waller v. State, 32 Ala.App. 586, 28 So.2d 815; Richardson v. State, 33 Ala. App. 40, 29 So.2d 883; Brown v. State, 33 Ala.App. 97, 31 So.2d 670; Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814; Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692; Baggett v. State, 33 Ala.App. 591, 35 So. 2d 576.

■ Charge number 8 was disapproved in the following cases: Jones v. State, 213 Ala. 390, 104 So. 773; McKenzie v. State, 19 Ala.App. 319, 97 So. 155; Merrell v. State, 21 Ala.App. 38, 104 So. 881; Brasher v. State, 21 Ala.App. 255, 107 So. 230; Hopkins v. State, 26 Ala.App. 213, 155 So. 891; Pratt v. State, 27 Ala.App. 301, 171 So. 393; Hendon v. State, 32 Ala.App. 615, 29 So.2d 360. It was approved in these: Doty v. State, 9 Ala.App. 21, 64 So. 170; Green v. State, 19 Ala.App. 239, 96 So. 651; McHan v. State, 20 Ala.App. 117, 101 So. 81. It is evident that the three last cited cases are out of harmony with the holding of the Supreme Court and the view expressed in the more recent decisions of this court.

We have herein responded to all questions which are presented for our review by the record.

It is ordered that the judgment of the court below be affirmed.

Affirmed.