46 So.2d 231

**NELSON et al. v. STATE.**

**7 Div. 974.**

Court of Appeals of Alabama.
April 5, 1949.

Rehearing Denied April 19, 1949.

Hawkins & Copeland, of Gadsden, for appellants.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The record of the proceedings in the lower court is regular in all respects, and discloses that each of the above named appellants was separately indicted, and both of the indictments originally contained two counts. The first count, in each indictment, charged the defendant with the offense of an assault with intent to murder. As to each first count in the indictments the following order of the court, as appears of record, reads as follows: "On this the 2nd day of June, 1948, comes the State, by its Solicitor, and on motion of the State, it is ordered and adjudged by the Court that a Nolle Prosequi be entered in each of the above styled causes, as to count one of the indictment in each case."

The trial court thereupon made the following statement: "Gentlemen of the jury, you will understand that you are trying two separate cases here. One of the cases is that of the State against Charles Ray Nelson, and the other is the case of the State against Cecil Roberson. By agreement between counsel for the State and the defendants, these two separate cases are being tried by the same jury and under the same evidence. So, it will be necessary for you to return separate verdicts in each case—a separate verdict in each case. In each count of the indictment, and in each count of each indictment—the first count charges assault with intent to murder, and the other offenses included in that charge, about which I will charge you later; and in the second count, an assault with intent to rob. I mention that, gentlemen, so that you will understand the issues you are trying here. The defendants, in answer to each of the charges, and each defendant, in answer to each of the charges, has interposed the plea of not guilty."

The trial resulted in the conviction of both defendants of the offense of an assault with intent to rob, and their punishment was fixed at imprisonment in the peniten-

tiary for a period of two years, as to each defendant.

The court adjudged each of them guilty, and entered judgments of conviction accordingly, from which this appeal was taken.

The State first introduced Raymond Martin, the alleged injured party. He testified that on February 15, 1948, he was engaged in the taxi business in Trussville, Alabama, he was approached by the two appellants at his taxi stand who asked him what fare he would charge to carry them to a point within six or seven miles of Attalla, Alabama. According to his testimony he agreed to carry them there for the sum of $9.00 to be paid upon their arrival, that they left Trussville about 11:30 A. M., on the Sunday morning in question, and that after they started on the trip both of appellants began drinking beer, which the witness claimed he did not know they had with them until after the trip was begun.

Martin testified that when they arrived at a point five or six miles south of Attalla, appellant Nelson told him to turn off a side road to the left and drive up to his uncle's farm where Nelson would obtain the $9.00 fare, and that immediately after he turned off the side road, about one-half mile from the highway they came to a gate or gap across the road which compelled them to stop for the purpose of opening the gate before proceeding up the road.

According to the prosecuting witness, immediately when he stopped the taxi appellant Roberson, who was sitting in the back seat grabbed him around the neck saying that "This is a stick-up" and proceeded to cut his neck or throat with some sharp object, while Appellant Nelson, who was seated in the front seat, grabbed his right arm. Martin testified that he then succeeded in freeing himself at which time he grabbed his .38 pistol which was on his person and got out of the car from the driver's side at the same time appellants got out on the other side. He then began shooting at appellant Roberson who ran away through the woods and he forced appellant Nelson to run away.

Prosecuting witness' brother, Howard Martin, testifying for the State, stated that he was present at the time appellants approached his brother and that he and his brother both made the arrangements and agreed upon the fare to be charged appellants. He testified that neither of the appellants appeared to have been drinking before they left in the taxi, that neither he nor his brother obtained any beer for them, and that he did not observe that they had any beer in their possession.

State's witness, Roscoe Nunn, testified that he lived on the Attalla-Birmingham Highway and that about 1:30 or 2 P.M., Sunday, February 15, 1948, appellant Roberson came up to his house and gave another man a pocket knife to drive him to a filling state where Roberson could call a taxi.

Deputy Sheriff E. L. Yates testified that on the Sunday afternoon in question he and Deputy Sheriff Goode were called to a point on the Attalla-Birmingham Highway, south of Attalla where they met prosecuting witness Martin; that a few minutes thereafter they apprehended and arrested appellant, Cecil Roberson; and that upon proceeding off the main highway onto the side road where the difficulty took place they apprehended and arrested appellant Nelson at the home of his uncle, one Doc Nelson. The officers testified that appellant Nelson was found hiding behind the chimney in the attic of his uncle's home.

Witness Yates testified that while appellant Roberson was in the officer's car between the time he was arrested and the time appellant Nelson was arrested, that Roberson admitted that he had put a knife against Martin's throat and told him that it was a stick-up, that Martin go out of the taxi and began shooting and that he ran off into the woods. The officer testified that at that time Roberson appeared to be drinking and that he also appeared to be intoxicated when they reduced his statement to writing some three hours later.

After proving a full and thorough predicate, the accused, Cecil Roberson, made a statement marked as "State's Exhibit A," which was reduced to writing and intro-

duced in evidence. Said statement reads as follows:

"Etowah County Jail
"Gadsden, Ala.
"Feb. 15, 1948
"Statement of Cecil Roberson

"The following is a true and correct statement and is being made to E. L. Yeats and R. D. Goode who have identified themselves as deputy sheriffs of Etowah County, without any threats or inducements being held out to me. I know that anything I say may be used against me in a criminal proceeding against me. This is a free and voluntary statement.

"Charlie Nelson and I left Gadsden bus station about daylight this morning and went toward Birmingham. We got out of the bus at a place the other side of Trussville and bought a case of beer. We left the beer joint walking and walked all the way to Trussville. We were both broke when we got to Trussville. Charlie said that 'we could get a taxi and when we got home we could get out and run off and leave him.' I told him I didn't want to do that. Then he said 'all right, we will get the taxi and when we get to my brothers I can get the money to pay him.' 'I already owe you $15.00 for paying my fine in Gadsden anyhow.'

"We then went to the taxi stand and asked the man how much he would charge us to take us home. He said he would for $9.00. We neither of us had any money when we got into the taxi.

"When we got to Shiloh Church in Etowah County Charlie told the driver to turn to the left there. We turned left and followed the road behind the church to a gap in a fence across the road. When the taxi stopped Charlie grabbed the driver. I was in the back seat and when Charlie grabbed hold of the driver I caught hold of him and made a pass at him with my pocket knife. I had had the knife open almost all the way after we got in the taxi. When I put my knife to his throat I said 'This is a stick-up.'

"The driver got loose from me and Charlie and jumped out of the car. We both got out on the other side of the car from the driver. When I got out of the car the driver shot at me. I crawled under the fence and ran up across a hill and went to a man's house and told him I wanted him to take me up to a telepone to call me a taxi. The man took me to a store in a Willys car and I was in the car when Deputy Yeats and Sgt. Courtney Yates of the Highway Patrol arrested me. I gave the knife to the man for driving me to the telephone. He gave it to Deputy Yeats in my presence and the one Mr. Yeats has now is the same knife I used.

"I have read the above statement and it is true and correct to the best of my recollection. This statement consists of two and a fraction pages.

"Signed Cecil Roberson
"Witness: E. L. Yeats
"R. D. Goode."

As stated in brief, appellants Roberson and Nelson testified that on Sunday morning, February 15, 1948, they rode the bus from Attalla to Trussville, Alabama, and that, upon getting off the bus, they approached a filling station where they saw prosecuting witness standing beside his taxicab; that they asked Martin if he knew where they could get some beer and that he said that he could get them some beer for the $9.00 which they told him they had with them. Appellants also testified that at the same time Martin agreed to bring them back home for $6.00 to be paid after they got to Nelson's uncle's house, that Martin left by himself and in a few minutes returned with the beer, that they all got in the taxicab and started toward Attalla.

Appellants further testified that soon after they started up the highway toward Attalla both they and Martin began drinking the beer, opening it with can-openers furnished by Martin, and that when they asked him for a can-opener the first time, he also got out of his glove compartment, a pistol which he put into his belt, and, laughing, said "Don't you guys try to start nothing." They testified that when they came to the side road a few miles south of Attalla which led to Nelson's uncle's farm, Nelson instructed the driver to turn there and go to his uncle's farm for the purpose of getting the fare; that after they had gone

about 100 yards they came to the gap or gate across the road at which time they stopped and all three got out and finished drinking the beer. It was at this point that Martin accused them of leading him off on the wrong road because they could not see any house from where they were.

The conflict in the evidence, above noted, created questions for the jury to consider and determine.

■ From the evidence in this case, some of which has been hereinabove set out, and considerable other evidence of like import, we are clear to the conclusion that it was amply sufficient to sustain the verdict the jury rendered, and to support the judgment of conviction pronounced and entered.

■■ Pending the trial numerous rulings of the court upon the admission and rejection of evidence were excepted to, each and all of the exceptions are so clearly free from error, no discussion in this connection is necessary. In but one instance only, counsel for appellant insists prejudicial error prevailed in the rulings of the court upon the evidence. As to this, the contention is, that after defendant's witness, Rev. Lige Kelley, on his direct examination, had testified that defendant Roberson's general reputation and his reputation for peace and quiet, was good, on the cross examination the State was permitted to ask the witness as to his reputation after the alleged offense had been committed and witness answered "They's a quite bit of talking about him being rough." Upon investigation we find the State is correct in the insistence "that the record does not show proper objection and exception to warrant a review of this insistence." Moreover, if the question was properly presented, we would hold, under Rules of Practice in Supreme Court, rule 45, Code 1940, Tit. 7, Appendix, that the matter complained of has not injuriously affected the substantial rights of defendant Roberson, in view of the preponderance of the State's evidence tending to show his guilt as charged in count 2 of the indictment. See also Cooley v. State, 233 Ala. 407, 171 So. 725.

The court delivered a very able, full and complete charge, which in addition to the numerous charges given at request of defendants, covered every phase of the law involved upon the trial of these cases.

■ Charge 2 was properly refused as singling out part of the evidence and not being based on all of the evidence. Russo v. State, 236 Ala. 155, 181 So. 502; Richardson v. State, 33 Ala.App. 40, 29 So.2d 883, certiorari denied 249 Ala. 93, 29 So.2d 884.

■ Charges 6 and 8 were properly refused as being predicated on the doubt of an individual juror. Shack v. State, 236 Ala. 667, 184 So. 688; Bankhead v. State, Ala.App., 32 So.2d 814.[1] Moreover, the appellants were given the benefit of the principle of these charges in given charges 5, 11, 17, and 18.

■ Charge 9 was properly refused as being predicated on the exclusion of every possibility of the defendants' innocence, rather than probability. Grubbs v. State, 213 Ala. 576, 105 So. 583; McGrew v. State, 21 Ala.App. 266, 107 So. 328.

■ The principle of requested charge 10 was fairly and substantially covered in the court's oral charge and given requested charges on reasonable doubt.

■ Charge 12 was faulty in that it was not predicated on reasonable hypothesis of guilt. Smith v. State, Ala.Sup., 39 So.2d 586.[2] Also, it was not based on a consideration of all of the evidence.

■ Charge 13 was properly refused as having otherwise been covered and not being predicated on a consideration of all the evidence.

■ Charge 15 was properly refused as not being based on a consideration of all of the evidence and being misleading. Hurston v. State, 235 Ala. 213, 178 So. 223. Moreover, the oral charge covered the law as to the credibility of witnesses.

■ There was no error in refusing requested charges A and B, as these charges dealt with self defense under the assault

1. 33 Ala.App. 269.

2. 252 Ala. 1.

with intent to murder counts of which each appellant was acquitted.

The motion for a new trial was, from what has been said, properly overruled.

Affirmed as to each case.