52 So.2d 230

**RUSSELL v. STATE.**

**7 Div. 115.**

Court of Appeals of Alabama.

Jan. 23, 1951.

Rehearing Denied Feb. 20, 1951.

Merrill, Merrill & Vardaman, of Anniston, for appellant.

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

Alfred Russell was indicted for the offense of burglary with intent to rape under count 1 of the indictment and with burglary with intent to steal or rape under counts 2 and 3. Title 14, Sec. 85, Code 1940.

The indictment follows substantially the code form and was not subject to the demurrers interposed. Title 15, Sec. 259, Subd. 29; Jinright v. State, 220 Ala. 268, 125 So. 606; Title 15, Sec. 232, Code 1940.

"When offenses are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative." Title 15, Sec. 249, Code 1940. See also, Connor v. State, 19 Ala.App. 444, 98 So. 482.

The jury returned a general verdict of guilt and imposed a fifteen year imprisonment term.

The affirmative charge was requested in defendant's behalf, but not as to each count in the indictment.

In this state of the record the general verdict will be referred to a good count which is supported by the proof. Moore v. State, 35 Ala.App. 95, 44 So.2d 262; Wiggins v. State, 244 Ala. 246, 12 So.2d 758.

It appears from the evidence that Miss Sue Wright and Miss Nellie Ruth Suddeth were student nurses at the Anniston Memorial Hospital. The two young ladies occupied a room in the nurses' home as their regular sleeping quarters. This structure was located apart from but near to the main hospital building.

On the night in question Miss Wright went to her room at about 11:25 o'clock and found that Miss Suddeth had already retired and was asleep. Miss Wright forthwith dressed in her pajamas and went upstairs to the room of some other nurses. When she returned to her apartment according to her testimony this occurred:

"Q. Now, on this return, did you see anyone in your room? A. Yes, sir.

"Q. When you left out of that room, Miss Wright, state whether or not that the room was closed up? A. I closed it when I left.

"Q. You closed the door? A. Yes, sir.

"Q. When you got back you have already told us there was someone in the room, do you know who that someone was? A. It was a colored man.

"Q. It was a colored man. What did you see him doing when you arrived, if anything? A. He was at my roommate's bed bending over.

"Q. Bending over your roommate's bed? A. Yes, sir.

"Q. In that room? A. Yes, sir.

"Q. Was she in the bed? A. She was asleep in the bed.

"Q. Was the light on, do you know? A. It was off.

"Q. It was off. Was there ever any light turned on at that time? A. I turned it on when I went in.

"Q. Now, tell us what took place there between you, your roommate and this colored person you say was in there if anything? A. Well, I opened the door, turned the light on and I saw him and he turned around and started to go out the door and I shoved the door—

"Q. What did he do? A. He put his arm, the back of his arm against my neck and I thought he was going to choke me.

"Q. He put the back of his arm on your neck? A. Yes, sir.

"Q. What else did he do? A. Well, I stepped back and let him out the door.

"Q. Who opened the door for him to get out? A. He did.

"Q. He did. Now, he was not in there so far as you know when you left? A. No, sir.

"Q. Some 25 or 30 minutes before that time? A. No, sir."

The police headquarters in the city was promptly notified and from there the information was relayed to a radio receiving car. The officers testified that they received the latter message at 12:20 when they were at a point about eight blocks from the hospital grounds. They responded immediately to the report and proceeded toward the hospital. When they reached within a short distance therefrom, they observed the appellant coming onto the sidewalk by a path or traveled way which led from the direction of the nurses' home. They arrested the accused and carried him in their car to the hospital. There Miss Wright saw him and unhesitatingly identified him as the person whom she found in her room about ten or fifteen minutes previously.

Miss Suddeth was awakened by the screams of her roommate and reached the door in time to observe the intruder as he ran down the hall. She testified that he was a colored man, bareheaded, and wearing a light colored overcoat. Miss Wright gave detailed evidence of the kind and color of his dress as she observed him in her room and as she chased him down the hall of the building. This delineation fitted the description of the clothes the appellant was wearing at the time of his arrest.

Dirt was removed from tracks which were found on the ground at the place where the intruder left the nurses' building. This was compared with samples which were scraped from the heels and soles of

defendant's shoes after he was placed in jail. An expert toxicologist who made the comparison testified: "The hairs and fibers that was found on the soles and heels of these shoes were similar to the hair and fibers that was detected in the soil in that white envelope." This container held the dirt taken from the tracks.

The appellant testified that he was born and reared at Oxford, Alabama; that he left there in 1939 to attend college and had been back occasionally on visits; that in the summer of 1948 he visited the Anniston Memorial Hospital when his aunt was a patient there. He disclaimed any knowledge of the location or existence of the nurses' home.

At the time in question he was teaching at Andalusia, Alabama. On the day of instant concern, which was Thanksgiving, he arrived at Oxford about 10:30 P. M. on a bus from Montgomery. After failing to find his sister at home and being unable to catch a bus, he proceeded to walk to Barber Terrace, a residential section in South Anniston. Here he was unsuccessful in contacting a friend he had hoped to see. From this point he started to the bus station in Anniston for the purpose of calling his sister in Oxford. According to appellant's testimony he walked continuously on the sidewalk of the street and was so journeying when he was stopped by the officers. He stated that he was not coming out of the travelway from the direction of the nurses' home, and denied that he had been on the hospital grounds that night.

The directions and distances of the indicated points of travel were estimated by some of the witnesses to be: From Oxford to Barber Terrace, north, 2½ miles, from this place to location of arrest, north, ten city blocks. The defendant was taken in custody about three blocks from the Anniston Bus Station.

We have attempted, at the risk of being tedious, to delineate the tendencies of the evidence somewhat in detail. We hope to assure a full and fair review of our conclusions.

The indictment alleges in part: "* * * broke into and entered an inhabited dwelling house of Willa Sue Wright and Nellie Ruth Suddeth * * *."

In the early case of Ex parte Vincent, 26 Ala. 145, the Supreme Court held: "At the common law, any house was a dwelling or mansion, in a burglarious sense, in which any person resided, or dwelt; and with reference to the offence which could only be committed in the night, we think the true test is, whether it was permanently used by the occupier, or any member of his family, as a place to sleep in."

We followed this authority in Avinger v. State, 29 Ala.App. 161, 195 So. 279, 280, and held that two adjoining rooms of a hotel occupied by a man and his wife as their sleeping quarters constituted "the inhabited dwelling house" of these persons in the sense that the term is used in our statute, now Sec. 85, Title 14 of the current code. See also, Adams v. State, 13 Ala.App. 330, 69 So. 357.

It is clear that the proof in the case at bar sustains the allegations of the indictment in this aspect, and meets the demands of the rule announced just above.

It appears from the evidence that Miss Suddeth went to her room and retired at about ten o'clock P. M. Miss Wright followed about an hour later, at which time the door was closed. When she departed to go upstairs she again closed the door. Upon her return, at the time she observed the intruder, the door was closed and the lights out in the room. On the basis of this evidence it is urged that a breaking is not sufficiently proved.

It is well settled by the authorities that a breaking, within the contemplation of the burglary statute of instant concern, is established if it is shown that the accused entered after opening a closed door. Cox v. State, 33 Ala.App. 395, 34 So.2d 179; Adair v. State, 19 Ala.App. 174, 95 So. 827.

The question of critical concern here is related to the possibility of some other person leaving the door open between the time Miss Wright left and the entrance of the intruder. There is no evidence that this occurred. If we should venture into the sphere of surmise and possibilities, we are faced with the unlikelihood and the high improbability of such a person failing to close the door to the room and leaving a young lady sleeping therein at that time of night.

In any event, we are clear to the conclusion that a jury question was presented on this factual issue.

Our attention is called to the holding in Scott v. State, 22 Ala.App. 380, 115 So. 853. It affirmatively appears from the delineated facts in this case that there were places of convenient and suitable entrance which were left open when the occupants of the dwelling retired. This proof tended to exclude the reasonable probability of a breaking at a door or window that was closed. In other words, the likelihood and opportunity of the entrance at an open ingress clearly appeared from the evidence, and there was no proof of a contrary tendency.

We do not have a comparable state of facts in the case at bar.

The claim of insufficient proof of intent is urged in brief of appellant's counsel. In support of this position cases from our own appellate courts and some from other jurisdictions are cited and discussed.

After a very studious consideration of this matter, we are brought to the inescapable conclusion that the fairly recent case of Holland v. State, 247 Ala. 53, 22 So.2d 519, is decisive of this question.

To assure an accurate and fair comparison of the facts in the two cases, we have read the entire record in the Holland case.

The first count of the indictment alleged: "* * * with intent to steal or with intent to commit rape." The other count alleged: "* * * with intent to steal or with intent to forcibly ravish a girl or woman."

The accused was a Negro man. The salient facts are: At about nine o'clock P. M. the lady occupants of the dwelling heard a noise in the house. They ran out and gave an alarm. The officers came promptly and found the defendant sitting on a table situated in a portion of the hall that continued into the dining room. He made no effort to escape. At the time a "knife" was found in his coat pocket. This was all the evidence which in any manner tended to establish the essential element of intent. So far as the record shows, the accused did not offer or give any explanation of his presence in the home. He did not testify in his own behalf.

On the basis of this proof the Supreme Court held that the affirmative charge was not due to be given for the defendant.

We think that all the facts and circumstances disclosed by the record in the case at bar tend more strongly and potently to sustain proof of intent than do those in the Holland case. See also, Cox v. State, supra; Brazier v. State, 25 Ala.App. 422, 147 So. 688; Adair v. State, supra.

Much emphasis is directed in brief of appellant's counsel to our conclusions in the recent case of McCollum v. State, 34 Ala. App. 207, 38 So.2d 291. Judge Harwood authored this opinion for the court. He set out the evidence with considerable care and much in detail. A review of these facts will reveal that the circumstances tending to show intent are quite different from those in the case at bar. We will not attempt to point out the distinctions.

Even in the McCollum case we were not willing to bring ourselves to the conclusion that the defendant was due the general affirmative charge. We did hold that the great weight of the evidence was contrary to the verdict.

Refused charge number 7 was disapproved in the following cases. Wilson v. State, 243 Ala. 1, 8 So.2d 422; Krasner v. State, 32 Ala.App. 420, 26 So.2d 519; Nelson v. State, 35 Ala.App. 1, 46 So.2d 231.

We approved charge number 12 in Rivers v. State, 20 Ala.App. 500, 103 So. 307. However, this holding was not followed in Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814; Register v. State, 34 Ala.App. 505, 42 So.2d 519; Stovall v. State, 34 Ala.App. 610, 42 So.2d 636; Nelson v. State, supra. See also, Vernon v. State, 239 Ala. 593, 196 So. 96.

The remaining charges refused to the appellant were either abstract or covered by given written instructions or the oral charge of the court. Title 7, Sec. 273, Code 1940; Gettings v. State, 32 Ala.App. 644, 29 So.2d 677.

Counsel for appellant excepted to a portion of the court's oral charge in this language: "If the Court please, we would like to except to that portion of the Court's oral charge that preceded the statement wherein

the Court said, 'It is not the province of the Court to say whether the defendant is guilty or innocent—', wherein the Court set out the elements of the offense charged in the indictment."

This is an exception by reference only and is not sufficiently specific to meet the demands of the reviewable rule. Forsythe v. State, 19 Ala.App. 669, 100 So. 198; Cowart v. State, 16 Ala.App. 119, 75 So. 711; J. R. Watkins Co. v. Goggans, 242 Ala. 222, 5 So.2d 472.

A question of very critical concern is the action of the trial judge in denying the motion for a new trial. We refer here to the stated ground that the verdict was contrary to the great weight of the evidence.

The appellant's disavowal of any participation in the charged offense was not directly supported by any evidence except his own. The circumstances of his arrival at Oxford were corroborated by other witnesses. To his credit he introduced a number of witnesses who testified that his character was good. There was no evidence to the contrary.

In approaching this review we are concerned primarily with the matter of identification. Of course, we must give due weight and consideration to all the facts disclosed by the record.

It must be accepted as a truism—based on human characteristics—that the accuracy of identifying a person is often frustrated and hindered by the identifier's surprise, fear, terror, and panic. The matter of space of time, opportunity to observe, and surrounding circumstances must of necessity enter the picture.

In the case at bar we have attempted to set out all the salient facts, except to say that the defendant when apprehended was dressed in rather an unusual attire. He wore a tan colored overcoat, zipper coat or jacket, shirt, colorful trousers, and tan shoes. He did not wear a hat or cap. These clothes are before us for inspection.

Within a very short time after the intrusion, the accused was carried before the young ladies and Miss Wright positively and unhesitatingly identified him as the person she found in her room.

The defendant was apprehended at a place and at a time which furnished proof that he was afforded an opportunity to commit the offense.

The high privilege of the appellate courts to disturb the action of the trial judge in matters of instant concern should be exercised with great care and due caution. It must be remembered that the verdict of a jury followed by the judgment thereon of the judge presiding at the trial should be given that weight and consideration that our judicial processes and procedures demand.

It is our considered conclusion that this judgment should not be disturbed in the case at bar. Freeman v. State, 30 Ala. App. 99, 1 So.2d 917; Hannon v. State, 34 Ala.App. 173, 38 So.2d 26; Fagan v. State, 35 Ala.App. 13, 44 So.2d 634; Cobb v. Malone, 92 Ala. 630, 9 So. 738; Booth v. State, 247 Ala. 600, 25 So.2d 427.

The judgment of the court below is ordered affirmed.

Affirmed.

### On Rehearing

In our original opinion, after discussing some of the refused charges, we concluded our review by stating that the remaining charges refused to appellant were either abstract or covered by given written instructions or the oral charge of the court.

On application for rehearing insistence is made that refused charge No. 19 cannot be logically and correctly classified among those instructions which were abstract or covered as indicated above.

The charge is: "I charge you gentlemen of the jury that the breaking out of a dwelling house is not a sufficient breaking but you must find from the evidence in the case that the defendant actually broke and entered the individual room of Willie Sue Wright and Nellie Ruth Suddith."

The court charged orally on this aspect of the law as follows:

"And the next element, are you gentlemen convinced beyond all reasonable doubt and to a moral certainty from the evidence, and the evidence alone, that this defendant broke into an inhabited dwelling house. Did he break in? That is one of the necessary and indispensable elements of burglary in the first degree—that there must be a

breaking. I charge you gentlemen of the jury that by way of illustration and example that if a door be shut in legal contemplation and if anyone, someone in any given case should open that door or open that window even though they don't hurt the door or break a lock or even unlock the door but if they open it and walk into some place where they have no right to be that in legal contemplation would be a breaking in the eyes of the law.

"Now, do you believe from the evidence in this case, gentlemen of the jury, beyond all reasonable doubt and to a moral certainty, that the defendant did break into the dwelling house referred to in the indictment and if you so believe, are you, do you believe beyond all reasonable doubt and to a moral certainty that if he did break that he made entry into the dwelling house, an inhabited dwelling house referred to in the indictment. That is actually went on in there. Did he go in there? Are you reasonably convinced beyond all reasonable doubt and to a moral certainty from the evidence, gentlemen of the jury, for you to solve is what is an inhabited dwelling house in the eyes of the law."

We take the view that charge No. 19 was substantially covered by this oral instruction. This is in accord with the conclusion we reached when the original opinion was prepared and published.

The application for rehearing is overruled.