PATTERSON, Judge.
Appellant, Willie Frank Foreman, was indicted for the offenses of first degree burglary, first degree robbery, and attempted arson in the first degree. By a second indictment, appellant was charged with third degree escape. On September 30, 1983, a jury found appellant guilty of first degree burglary, second degree assault, and third degree escape. The jury could not reach a verdict on the charge of attempted arson in the first degree. The trial court sentenced appellant to a term of ten years in the state penitentiary for the offense of first degree burglary; a term of five years in the state penitentiary for the offense of second degree assault; to run *978 concurrently with the burglary sentence, and a term of one year and one day in the state penitentiary for the offense of third degree escape, to run concurrently with the burglary and assault sentences. The court dismissed the attempted arson charge.
The tendency of the evidence established that appellant and the victim, William Wesley Harrell, had been on poor terms for approximately ten years. Appellant was a young man, age twenty-four, who resided with his parents in a home located across the street from Harrell, an older man, who was retired from thirty-two years’ employment with American Cast Iron Pipe Company (ACIPCO). Appellant and Harrell had been neighbors for approximately sixteen years. Harrell described his relationship with appellant as one of “constant agitation and harassment” by appellant.
According to Harrell, on the afternoon of February 1, 1983, at approximately 4:45 p.m., he went into his garage and found appellant “slinging gasoline all over the garage” and holding a cigarette lighter in his hand. Harrell stated that this was the first time he had had any contact with appellant that day. Harrell testified that, upon seeing appellant, he “attacked” appellant and a fight ensued, which carried them out of the garage, into the street.
According to Harrell, Marcei Anneak King, who was appellant’s girlfriend and co-defendant, was also present in the garage. King said, “You old son-of-a-bitch, I’m going to kill you.” Harrell testified that she had an open knife in her hand. Harrell stated that he hit King and she retaliated by hitting him with her fist and with the knife. Harrell stated that he fell during the fight, at which time appellant and King picked him up and “drug” him toward the street. Appellant’s mother arrived at the scene and tried to help Harrell until Harrell’s son-in-law, Kenneth Alan Shelnutt, arrived and helped him to the house.
Harrell further testified that he had a “billfold” in his back pocket prior to the fight and that during the fight he felt someone tugging at his back pocket. Harrell later discovered his wallet missing. The wallet was found in appellant’s truck subsequent to his arrest.
Mrs. Louise Harrell stated that she observed appellant and King walking across the road toward the Foreman residence and Mrs. Foreman walking toward Harrell, who was “slumped over” in the driveway. Mrs. Foreman was helping Harrell support himself when Shelnutt arrived. Shelnutt took Harrell into the Harrell home, where he remained until the paramedics arrived and transported him to the hospital. According to Mrs. Harrell and Shelnutt, Harrell was almost unconscious. It must be noted that Harrell’s account differed from that of other witnesses, presumably due to the extent of his injuries. Harrell sustained various injuries during the fight, including a cut under his chin and a stab wound in the side.
Sergeant Myron Bradley of the Garden-dale Police Department arrived at the scene shortly after Harrell was taken inside, at approximately 5:00 p.m., and observed a “commotion” taking place. Appellant and King had departed in appellant's truck, with King driving. Bradley questioned Harrell, who stated that appellant had “attacked” him, and he further reported that his wallet was missing. Upon investigation, Bradley noticed a “very strong” smell of gasoline about the garage and Harrell’s person. Bradley observed a plastice gallon jug covered with a “bright red substance” and containing a liquid. The jug contained approximately a half cup of liquid, which was determined to be consistent with gasoline. A white “Bic” lighter with the same red substance on it was also recovered. The bright red substance was never tested to determine its composition.
In the meantime, Officer Brumbaugh of the Fultondale Police Department, and Patrol Sergeant M.S. Belcher of the Garden-dale Police Department, stopped appellant’s truck. Appellant attempted to escape, but he was pursued and caught by Belcher. Appellant resisted and fought with the officer, but the officer subdued him and placed him under arrest.
Sergeant Eddie Deason of the Garden-dale Police Department conducted an inven *979 tory search of appellant’s vehicle. Harrell’s ACIPCO retirement card was discovered on the driver’s side floorboard. Various other items were recovered, which included Harrell’s wallet, containing additional identification belonging to Harrell.
Officer Ronnie Mozier of the Gardendale Police Department was directed to transport appellant to Cooper Green Hospital for treatment at approximately 6:00 p.m. Upon their return, Mozier opened the back door of the patrol car to allow appellant to exit. As Mozier was securing the door of the vehicle, appellant shoved Mozier against another car and ran. Mozier called for appellant to halt twice, which appellant refused to do. A warning shot was fired and appellant continued to run. Mozier gave chase and appellant got “boxed in” in an alley without an exit. Appellant was again instructed to halt. Appellant turned to Mozier and stated that he was not going back to the jail. Mozier raised his revolver and appellant placed his hands on a car that was next to him. Appellant was returned to jail. After this evidence was presented, the State rested.
Appellant, in his defense, testified that Harrell induced the altercation by making derogatory remarks about him and his mother. He further testified that subsequent to Harrell’s remarks, he followed Harrell into the garage and the fight ensued when Harrell attacked him. Appellant denied “splashing” gasoline in the garage, having possession of a knife, or knowing how Harrell got stabbed. According to appellant, he was merely defending himself.
Appellant contends that the evidence was insufficient to support a verdict of guilt on the charges of first degree burglary and second degree assault. We find that appellant’s conviction for first degree burglary was error. His conviction of second degree assault was proper.
I
Burglary in the first degree is defined by § 13A-7-5, Code of Alabama 1975, as follows:
“(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
“(1) Is armed with explosives or a deadly weapon; or
“(2) Causes physical injury to any person who is not a participant in the crime; or
“(3) Uses or threatens the immediate use of a dangerous instrument.
“(b) Burglary in the first degree is a Class A felony. (Acts 1977, No. 607, p. 812, § 2610; Acts 1979, No. 79-471, p. 862, § 1.)”
A “dwelling” is defined by § 13A-7-l(3) as “[a] building which is used or normally used by a person for sleeping, living or lodging therein.” In the instant case, we must determine whether the garage, in which the offense occurred, was part of the dwelling.
Testimony at trial established that the garage was not attached to the dwelling and was in fact a separate building located at least twenty feet from the dwelling. We believe that the garage was clearly within the curtilage of the dwelling and the trial court so held.
At common law outbuildings within the curtilage of the dwelling were “regarded as parts of the dwelling house.” 12A C.J.S., Burglary § 30 (1980). See also Annot., 43 A.L.R.2d 827, 833 (1955). In Ex parte Vincent, 26 Ala. 145, 153 (1855), the Alabama Supreme Court stated: “At common law, not only the dwelling-house proper, but all other buildings within the curti-lage, or some common fence, were deemed part thereof....” The court then held that the term “dwelling-house” would be given the same meaning “as that term in burglary at the common law.” Id. at 154. The early definitions of burglary, under Alabama statutes, incorporated the holding of Vincent and defined burglary so as to apply to buildings within the curtilage of the dwelling. The Revised Code of Alabama *980 (1867), § 3695, first defined burglary as follows:
“Any person who, either in the night or day time, with intent to steal, or to commit a felony, breaks into and enters a dwelling house, or any building within the curtilage of a dwelling house, though not forming a part thereof; or into any shop, store, warehouse or other building, in which any goods, merchandise, or other valuable thing, is kept for use, sale, or deposit, is guilty of burglary, and must on conviction be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than two, nor more than twenty years.” (Emphasis added.)
The 1876 Code of Alabama, § 4323, defined burglary substantially as above with the exception of decreasing the minimum sentence and including “any building, structure, or enclosure within the curtilage of a dwelling-house.” (Emphasis added to denote change in language.) This language was followed in subsequent Codes until Title 14, § 85 and § 86, Code of Alabama 1940, when the legislature divided the offense of burglary into first and second degrees.
Title 14, § 85, defined burglary in the first degree as follows:
“Any person who, in the nighttime, with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house, or any other house or building, which is occupied by any person lodged therein is guilty of burglary in the first degree, and shall on conviction be punished at the discretion of the jury, by death or by imprisonment in the penitentiary for not less than ten years. (1935, p. 159.)” (Emphasis added.)
Title 14, § 86, defined burglary in the second degree as follows:
“Any person who in the daytime with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house or any other house or building which is occupied by any person lodged therein, or any person who either in the nighttime or daytime with intent to steal or to commit a felony, breaks into and enters any uninhabited dwelling house, or any building, structure or enclosure, within the curtilage of any dwelling house, though not forming any part thereof, or into any shop, store, warehouse or other building, structure or enclosure in which any goods, wares, merchandise or other valuable thing is kept for use, sale, or deposit, provided such structure or enclosure other than a shop, store, warehouse or building is specially constructed or made to keep such goods, wares, merchandise, or other valuable thing, is guilty of burglary in the second degree and shall on conviction be imprisoned in the penitentiary for not less than one year, nor more than ten years.” (Emphasis added.)
See also, the wording of Title 14, § 85 and § 86, Code of Alabama 1940 (Recomp.1958), which is identical to the above quoted language. This language clearly changes the common law definition of dwelling house as it relates to first degree burglary. In § 85 no reference is made to any “building, structure or enclosure, within the curti-lage” of the dwelling; these areas are reserved for § 86. Therefore, if an outbuilding within the curtilage were entered, as was the garage in the case at bar, the offender would have been guilty of burglary under § 86, but not first degree burglary. The legislature could have included burglary of an outbuilding within the curti-lage under the first degree burglary statute if it had so intended; however, when the greater offense is viewed in connection with the lesser offense, it becomes obvious that outbuildings within the curtilage were intentionally omitted from the greater offense.
Sections 13-2-40 and 13-2-41, Code of Alabama 1975, retained the language of the 1940 and 1958 (Recomp.) code provisions, except for a change in the punishments. However, when the legislature enacted the Alabama Criminal Code, effective January 1, 1980, the burglary provisions underwent substantial change, with the offense being divided into three degrees. See Ala.Code (1975), §§ 13A-7-5 through 13A-7-7. These provisions made no reference to outbuildings within the curtilage; *981 thus we must assume that this was an intentional omission. “It is a fundamental principle of statutory construction that in enacting the statute the legislature had full knowledge and information as to prior and existing law and legislation on the subject of the statute.” Miller v. State, 349 So.2d 129, 131 (Ala.Cr.App.1977). The legislature defined “dwelling” as “[a] building which is used or normally used by a person for sleeping, living or lodging therein.” Ala.Code (1975), § 13A-7-l(3). The Commentary to § 13A-7-1 states that the term dwelling “is restricted to buildings used for sleeping and living.” Thus, we can only conclude that the legislature intended that the term “dwelling” be construed narrowly to encompass only those areas “normally used for sleeping, living or lodging” and not be given the common law construction whereby outbuildings within the curtilage of the dwelling proper would be included. The trial court therefore erred in finding as a matter of law that the garage in this case was part of the dwelling for purposes of first degree burglary.
The judgment of the trial court, however, need not be reversed and the case remanded to the lower court for retrial. As stated in Edwards v. State, 452 So.2d 506, 507 (Ala.Cr.App.1983), aff’d, 452 So.2d 508 (Ala.1984):
“[S]ince the jury returned a verdict on the higher degree, it found the existence of every element of the lesser included offense. ... [Sjtate and federal appellate courts have inherent authority to reverse a conviction while at the same time ordering an entry of judgment on a lesser included offense.”
See also Weems v. State, 463 So.2d 173 (Ala.Cr.App.1985); Pack v. State, 461 So.2d 910 (Ala.Cr.App.1984). In the case sub judice the State clearly proved each element of second degree burglary as defined by § 13A-7-6.
II
Appellant further contends that there was insufficient evidence to support a conviction of burglary in the first or second degree because the element of “intent to commit a crime therein, to-wit, arson” was not sufficiently proven. It is appellant’s position that because the jury did not reach a verdict on the attempted arson charge, it necessarily could not have found that appellant intended to commit the crime of arson when he entered the garage. We find this contention to be without merit. The jury was correctly informed of the elements of burglary on at least three occasions and was specifically informed of the necessity of finding that appellant intended to commit the crime of arson if he was to be convicted of burglary. The jury was specifically instructed on the elements of attempted arson in the first degree. We do not think that the jury’s failure to reach a decision on the attempted arson charge has any effect on their finding of an “intent” to commit arson for purposes of the burglary statute. The two crimes are entirely separate, and although they may share a common element of “intent,” they do not share identical elements.
Even if it were assumed that the jury reached inconsistent verdicts, we would not find any reversible error. See Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Hammond v. State, 497 So.2d 558 (Ala.Cr.App.1986). The record contains ample evidence of appellant’s guilt of the burglary offense, and the record further reflects that this verdict is the product of a fair trial.
Appellant introduced affidavits by two jurors to support his contention in his motion for new trial that the element of intent to commit arson was not found by the jury during its deliberations. Generally, a jury verdict “may not be impeached by testimony of the members of the jury panel as to things said and done in the jury room.” Atwell v. State, 354 So.2d 30, 38 (Ala.Cr. App.1977), cert. denied, 354 So.2d 39 (Ala. 1978). See also Richardson v. State, 439 So.2d 756 (Ala.Cr.App.1983). We find no merit in appellant’s contention in this regard in this case.
Ill
Appellant contends that there was insufficient evidence to support a charge of sec *982 ond degree assault because the State failed to show the “infliction of a serious physical injury,” as that term is defined by § 13A-l-2(9), Code of Alabama 1975. The jury was not instructed on the element of “serious physical injury”; rather, it was properly instructed on the element of “physical injury” as defined by § 13A-l-2(8), which is defined as “[ijmpairment of physical condition or substantial pain.” The trial judge was properly proceeding under the second alternative of second degree assault, which requires the infliction of physical injury by means of a deadly or dangerous weapon. Ala.Code, § 13A-6-21(a)(2).
We find that there was sufficient evidence from which the jury could find each element of second degree assault pursuant to § 13A-6-21(a)(2).
We find no merit to the remaining contentions raised by appellant on this appeal.
Based on the foregoing, we affirm the judgment of the lower court, in part; reverse in part; and remand with directions. In accordance with this opinion, we reverse the judgment of conviction of burglary in the first degree. The trial court is instructed to set aside appellant’s conviction for the offense of burglary in the first degree and to enter a judgment of conviction on the lesser included offense of second degree burglary and to sentence appellant accordingly. When this is completed, the lower court should make due return of its action to this court. We affirm appellant’s conviction of assault in the second degree.
AFFIRMED, IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.
All Judges concur.
ON RETURN TO REMAND
Pursuant to our order of remand, the trial court set aside appellant’s conviction for the offense of burglary in the first degree and entered a judgment of conviction on the lesser included offense of second degree burglary and imposed a sentence of 10 years' imprisonment.
The trial court having complied with our directive, appellant’s conviction and sentence are hereby affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges Concur.