David L. Woods was indicted for attempted murder and for first degree burglary. Following a jury trial, he was acquitted of attempted murder and convicted of burglary in the first degree. He was sentenced to life imprisonment as a habitual offender. He raises five issues on this appeal from that conviction.
 I
The defendant asserts that the trial court erred by granting the State's challenge for cause to prospective jurors Ethel Carter and Lillian Hardley. Ms. Carter knew the defendant's sister, and her sons *Page 332 
went to school with the defendant. She also stated that she knew defense counsel "personally as a friend." Ms. Hardley knew the defendant's mother and sisters and "most of his family." Her brother used to "go with" defendant's sister. After the veniremembers revealed these relationships, the following occurred:
 "MR. SULLIVAN [Assistant District Attorney]: And, Ms. Carter, Ms. Hardley . . . upon the friendship . . . that you may have in these particular cases, the knowledge of these individuals that I have asked about, going to you first, Ms. Carter, you're stating that you could not sit on this case and keep an open mind and base your evidence solely on the evidence in this case; is that correct?
MS. CARTER: (Nods head.)
"MR. SULLIVAN: And Ms. Hardley.
"MS. HARDLEY: Yes.
 "MR. SULLIVAN: And you cannot keep an open mind and base your decision solely on the evidence in this case; is that correct?
"MS. HARDLEY: Right.
". . . .
"VOIR DIRE EXAMINATION
"BY MR. TURBERVILLE [Defense counsel]:
 "Q Ladies and gentlemen, as you have been told, my name is Don Turberville. "Now let me ask you first . . . Ms. Carter, and Ms. Hardley . . . y'all indicated earlier that you didn't want to serve on the jury, that you didn't think that you could render a verdict. Now you're not saying if you did serve on the jury that in fact you couldn't follow the law as given to you by the judge, are you?
". . . .
 "MR. TURBERVILLE: All right. Where is Ms. Carter? Ms. Carter, what about yourself? If you were selected to serve, you're not saying that you couldn't follow the law, are you?
"MS. CARTER: Right.
 "MR. TURBERVILLE: In other words, what you're saying, you would rather not serve.
"MS. CARTER: Right.
"MR. TURBERVILLE: Is that it?
"MS. CARTER: Right.
"MR. TURBERVILLE: And Ms. Hardley, how about you?
"MS. HARDLEY: Same.
 "MR. TURBERVILLE: All right. In other words, you could follow the law? You would just rather not serve.
"MS. HARDLEY: Right.
". . . .
 "[Further voir dire examination by] MR. SULLIVAN: Ms. Carter, I believe you stated that some of your children went to school with the Woods and that you have known them and other members of the family throughout the years.
"MS. CARTER: Yes.
 "MR. SULLIVAN: Do you believe that you could set aside those friendships and base your decision solely on the evidence in this case?
"MS. CARTER: No.
"MR. SULLIVAN: You could not do so?
"MS. CARTER: No — yeah.
"MR. SULLIVAN: All right. Thank you. Ms. Hardley.
"MS. HARDLEY: Yes.
 "MR. SULLIVAN: You've also stated that you know numerous reasons that you stated previously, that you do not feel comfortable serving as a juror in this case. In fact, you previously stated that you could not serve as a juror in this case, that you honestly did not think that you could. Mr. Turberville asked you and you stated that maybe that you could. I'll ask you at this time, if you would, search your mind, please, and tell the Court whether you honestly believe that you could sit as a juror in this case and base your decision solely on the evidence.
 "MS. HARDLEY: I wouldn't feel comfortable. I know Mary real well and —
"MR. SULLIVAN: You're saying that you could not?
"MS. HARDLEY: No."
"[A]ny . . . ground which indicates probable prejudice will disqualify" a venire member. Alabama Fuel Iron Co. v.Powaski, 232 Ala. 66, 71, 166 So. 782, 786 (1936). "Broad discretion is vested with the trial court in determining whether or *Page 333 
not to sustain challenges for cause." Ex parte Nettles,435 So.2d 151, 154 (Ala. 1983). The answers given by Ms. Carter and Ms. Hardley here were somewhat equivocal, yet in granting the State's challenge for cause, the trial court interpreted them as follows: "As far as Ms. Carter, she said she thinks there's no way that she could be fair, and Ms. Hardley seems to say the same thing." The following observation made in Carter v. State,420 So.2d 292 (Ala.Cr.App. 1982), is applicable here:
 "Although the prospective juror's answers indicated reluctance and hesitation rather than definite inability to decide the case on the evidence alone, the trial judge was in a position to observe the demeanor and determine the prejudice of the venireman. The decision of a trial court to disqualify a juror on a challenge for cause is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion."
Carter v. State, 420 So.2d at 295-96. See also Howard v. Davis,815 F.2d 1429, 1431 (11th Cir.), cert. denied, 484 U.S. 864,108 S.Ct. 184, 98 L.Ed.2d 136 (1987); Ex parte Cochran,500 So.2d 1179, 1183-84 (Ala. 1985), cert. denied, 481 U.S. 1033,107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).
 II
The State's evidence established that the defendant forcibly entered the residence of Miss Sarah Lee Jones, a 75-year-old retiree, while Miss Jones was out to lunch. When Miss Jones returned to her home, she noticed that a screen had been cut, a window opened, and some personal property moved. She immediately left the house and called the Camden Chief of Police, Robert L. Rogers. Chief Rogers arrived shortly thereafter and saw the defendant jump out of a window of Miss Jones's house. When the police chief ordered the defendant to "stop," the defendant turned and fired two shots at Chief Rogers.
Subsequently, Miss Jones found a banana peel, a bottle of Scotch and a small knife on her kitchen table. On the back steps of the house, she found a package of luncheon meat, a can of tuna fish, and a candy bar. Three latent fingerprints belonging to the defendant were found on the luncheon meat package.
The defendant claims the prosecution presented insufficient evidence of first degree burglary because it did not establish, first, that Miss Jones's residence was an inhabited dwelling at the time of the offense and, second, that any property was stolen from her residence. The defendant apparently concedes the fact that the moving of food items constituted circumstantial evidence of an intent to commit theft, but he contends that the value of the property moved amounted only to misdemeanor rather than to felony theft. He therefore argues that he cannot be guilty of first degree burglary because the State proved no intent to commit a felony inside the residence.
These arguments are based on Alabama's pre-Criminal Code definition of first degree burglary, which defined the offense as breaking and entering an "inhabited dwelling house" with the "intent to steal or commit a felony." See Ala. Code 1975, § 13-2-40 (repealed by Act No. 607, § 2610, 1977 Ala. Acts 812, amended by Act No. 79-471, § 1, 1979 Ala. Acts No. 862, now codified at Ala. Code 1975, § 13A-7-5). Under current law, the premises must be a "dwelling," see § 13A-7-5(a), "which is restricted to buildings used for sleeping and living." §§13A-7-5 through 13A-7-7, Commentary at 233 (emphasis added).
 "It is not required, however, that a person actually be within the structure at the precise moment of the offense in order [for the structure] to qualify as a 'dwelling,' but it is sufficient if it is being used generally for sleeping and living. This changes the law of first degree burglary, former § 13-2-40, which required that the dwelling be occupied by some person at the time of the entry. Thomas v. State, 267 Ala. 44, 100 So.2d 329 (1958)." §§ 13A-7-5 through 13A-7-7, Commentary at 233.
Also, under current law, the accused need not have had the intent to commit a felony in order to be convicted of first *Page 334 
degree burglary. Section 13A-7-5 requires the intent to commit "a crime," and "a crime" is a "misdemeanor or a felony." Ala. Code 1975, § 13A-1-2(5); Minshew v. State, 542 So.2d 307,312 (Ala.Cr.App. 1988). We find the evidence sufficient to sustain the conviction.
 III
The defendant maintains that the trial court erred by refusing to charge the jury on the lesser included offense of burglary in the third degree. A lesser included offense instruction should be given if there is any reasonable theory from the evidence to support a verdict of guilt on the lesser charge. Fulghum v. State, 291 Ala. 71, 75, 277 So.2d 886, 890
(1973); Ala. Code 1975, § 13A-1-9(b) ("The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense"). Here, there is no evidence to support a conviction of the lesser included offense.
For present purposes, there are two differences between first and third degree burglary. The first degree burglar enters adwelling and is armed, whereas the third degree burglar enters a building and is unarmed.
As previously discussed in Part II, supra, the defendant's argument that the premises did not qualify as a "dwelling" because they were not occupied at the time of the burglary, is without merit. He also argues that because the jury acquitted him of the attempted murder of Chief Rogers, it must necessarily have believed that he was not armed, thereby negating that element of first degree burglary and providing a rational basis for finding him guilty of third degree burglary. This argument is also unavailing.
To begin with, the propriety of a lesser offense charge is judged not from hindsight, in light of arguably inconsistent verdicts, but from the perspective of the trial judge who, after considering all the evidence, must determine whether there is any "reasonable theory from the evidence to support such a proposition." Haynes v. State, 461 So.2d 869, 873
(Ala.Cr.App. 1984) (emphasis added). Here, the defendant was identified by Chief Rogers as the subject who jumped from the window of Miss Jones's house and fired a gun at him. The defendant presented no evidence. Thus, there was simply no theory from the evidence to support the proposition that defendant was unarmed.
Moreover, the jury's acquittal of the defendant on the attempted murder charge is not inconsistent with the conviction for first degree burglary. The acquittal does not negate the element of the defendant's being "armed" during the burglary. The jury might well have concluded that although defendant was armed and, in fact, fired twice at Chief Rogers, he nevertheless had no intent to kill, an indispensable element of attempted murder. See Free v. State, 455 So.2d 137, 147
(Ala.Cr.App. 1984); Ala. Code 1975, §§ 13A-4-2(a) and 13A-62(a)(1).
 IV
The trial court did not err by charging the jury that the doubt which would warrant defendant's acquittal was "not a mere fanciful, vague, speculative or conjectural doubt, but . . . a reasonably substantial doubt arising from the evidence. . . ." Despite the defendant's argument that defining "reasonable doubt" in terms of the word "substantial" lowered the State's burden of proof, the use of the term "substantial" to define reasonable doubt has been approved by a long line of Alabama cases, see, e.g. Talbert v. State, 121 Ala. 33, 37, 25 So. 690,692 (1899) ("doubt must be actual and substantial"); Owens v.State, 52 Ala. 400, 404 (1875) (doubt must be "actual and substantial"); Williams v. State, 455 So.2d 210, 211
(Ala.Cr.App. 1984) (doubt must be based upon a "substantial reason"); Walker v. State, 369 So.2d 814, 824 (Ala.Cr.App. 1978), rev'd on other grounds, 369 So.2d 825 (Ala. 1979) ("actual, substantial doubt" and "reasonable, substantial doubt)."
 V
Finally, the defendant contends that his presentence report contained the following *Page 335 
"illegal" information: his prior juvenile and arrest records, the criminal records of his mother and brother, the opinion of the probation officer that he was a "dangerous man," and that he was considered by local law enforcement officials as a "highly dangerous criminal," although "regarded in some circles as something of a 'folk hero.' "
The defendant's criminal record included eight juvenile arrests, 14 pending felony indictments ranging from burglary to capital murder, and one felony conviction. The inclusion in a presentence report of juvenile adjudications and criminal charges not resulting in convictions violates neither the Constitution, Jackson v. State, 501 So.2d 542, 548 (Ala.Cr.App. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3242,97 L.Ed.2d 746 (1987), nor Rule 3(b)(2), A.R.Cr.P.(Temp.), Thompson v.State, 503 So.2d 871, 880 (Ala.Cr.App. 1986), aff'd,503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204,98 L.Ed.2d 155 (1987), as long as "there is absolutely no indication that [the sentencing judge] was under any mistaken or erroneous belief that these mere arrests were actual convictions," Godfrey v. State, 383 So.2d 575, 578
(Ala.Cr.App.), cert. denied, 383 So.2d 579 (Ala. 1980). See also Smiley v. State, 435 So.2d 202 (Ala.Cr.App. 1983). Here, in imposing sentence, the trial judge stated that he considered "the prior felony against [the defendant]." It is apparent that he was not acting under any misapprehension about the number of actual convictions the defendant had.
Rule 3(b)(5), A.R.Cr.P.Temp., provides for the inclusion in a pre-sentence report of "defendant's social history, including family relationships." The prior convictions of defendant's mother and brother listed by the probation officer were for hindering prosecution of the defendant, or for helping him to escape, and constituted evidence of his "family relationships" highly relevant to sentencing.
The probation officer's report characterizing defendant's reputation in the community as "something of a folk hero" and as a "highly dangerous criminal," while hearsay, was evidently not without foundation. In view of defendant's extensive record of arrests and indictments for crimes of violence, it can fairly be assumed that the characterizations of his reputation were accurate. Compare Harbor v. State, 465 So.2d 455, 459
(Ala.Cr.App. 1984), cert. quashed, 465 So.2d 460 (Ala. 1985) (information in presentence report that accused had "reputation for involvement in use and sale of illegal drugs . . . was not . . . entirely supposed on the basis of hearsay, since he had a prior conviction for possession of marijuana"). As we observed in Harbor v. State, there was no error in the receipt of evidence regarding defendant's reputation:
 "[W]e find no error by the trial court in receiving evidence clearly permitted by A.R.Crim.P.Temp. 6, which provides in pertinent part: ' . . . Any evidence that the court deems to have probative value may be received, regardless of its admissibility under the rules of evidence. The pre-sentence report, if submitted, shall be considered as part of the evidence.' " Harbor v. State, 465 So.2d at 459.
The defendant received a fair trial. His conviction and sentence are due to be affirmed.
AFFIRMED.
All Judges concur.