[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 221 
The appellant, Anthony Keith Brown, appeals from his convictions for one count of receiving stolen property in the first degree, a violation of § 13A-8-17, Ala. Code 1975; one count of receiving stolen property in the second degree, a violation of § 13A-8-18, Ala. Code 1975; one count of conspiracy to unlawfully possess or receive a controlled substance, a violation of §§ 13A-12-212 and 13A-12-204, Ala. Code 1975; three counts of burglary in the third degree, a violation of §13A-7-7, Ala. Code 1975; one count of theft of property in the first degree, a violation of § 13A-8-3, Ala. Code 1975; one count of theft of property in the second degree, a violation of § 13A-8-4, Ala. Code 1975; one count of unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Ala. Code 1975; and three counts of criminal mischief in the second degree, a violation of § 13A-7-22, Ala. Code 1975. Brown was sentenced pursuant to the Habitual Felony Offender Act to life imprisonment for each conviction except for the criminal-mischief convictions, for which he received a sentence of one year for each count, in accordance with § 13A-5-7, Ala. Code 1975. All the sentences were to be served consecutively. He was also assessed fines.
The evidence tended to show the following. During the evening of December 10, 1998, Regan Lee Jones and Steve Hampel broke into the Ken Nix Pharmacy in Florence. Jones threw a cinder block through the window of the pharmacy and he and Hampel stole large quantities of drugs. Later that night, Jones and Hampel met Brown, and Brown bought some of the stolen drugs from them. (R. 186.)
On December 30, 1998, Brown, Hampel, and Jones agreed to break into the Ken Nix Pharmacy a second time. (R. 191.) Brown participated in the offense by supplying gloves, masks, bags, and transportation. *Page 222 
(R. 191.) Brown, Hampel, and Jones divided the drugs obtained as a result of the burglary. (R. 197.)
On January 21, 1999, Brown, Hampel, Jones, and Dennis Nichols decided to burglarize Ken Nix Pharmacy a third time. (R. 201, 204.) Brown again participated in the offense by supplying equipment and transportation. (R. 201.) The four men divided the drugs acquired from the pharmacy. (R. 211.)
On February 28, 1999, Brown, Hampel, and Jones burglarized Northgate Pharmacy in Florence. (R. 211.) Brown again provided the transportation and the supplies. (R. 216.)
Officer Scott Perkins of the Florence Police Department investigated the Northgate Pharmacy burglary. (R. 81.) While at the pharmacy around 11:00 p.m. conducting his investigation of the burglary, he saw a black Ford Bronco sport utility vehicle driving past the pharmacy. (R. 82.) After Perkins left the pharmacy and resumed his patrol, he received information that Brown and Hampel were wanted as suspects in the pharmacy burglaries. (R. 84.) At approximately 3:30 a.m. on March 1, 1999, Perkins again saw the black Ford Bronco. (R. 83.) When Perkins saw the vehicle stop at a green light, weave into the right lane, and turn left on a red light, he made a traffic stop. (R. 84-85.) During the stop, he recognized Hampel, a passenger in the vehicle, as a suspect in the burglary, and he arrested him. (R. 87.) Brown was also in the vehicle. Upon returning to the car, Perkins noticed Brown's hands between his legs and, for safety reasons, ordered him to get out of the car. (R. 88.) A pill bottle from the Northgate Pharmacy was discovered in plain view on the driver's seat.
The testimony indicated that after Brown was read his Miranda[1]
rights, he signed a waiver and he voluntarily gave a statement to Officer Keith Terry of the Florence Police Department. (R. 378-80.) In Brown's statement, he explained his involvement in all four burglaries. (R. 382-389.) A search of Brown's residence revealed many of the stolen drugs. (R. 377.)
 I.
Brown contends that the trial court erred in conducting a portion of his trial when he was not present in the courtroom. Specifically, he argues that he could not be tried in absentia and that he was not present at the commencement of trial. The record indicates that Brown was present when the venire was qualified and when the jury was struck. The trial court recessed for the evening. During the recess, Brown escaped from custody. The next morning, although Brown was not present, the trial continued.
Rule 9.1, Ala.R.Crim.P., states:
"Rule 9.1 Defendant's Right to be Present.
 "(a) Right to be present. The defendant has the right to be present at the arraignment and at every stage of the trial, including the selection of the jury, the giving of additional instructions pursuant to Rule 21, the return of the verdict, and sentencing.
"(b) Waiver of the Right to be Present.
 "(1) Except as provided in subsection (2), a defendant may waive the right to be present at any proceeding in the following manner:
". . . . *Page 223 
 "(ii) By the defendant's absence from any proceeding, upon the court's finding that such absence was voluntary and constitutes an understanding and voluntary waiver of the right to be present, and that the defendant had notice of the time and place of the proceeding and was informed of the right to be present."
Another factor to consider in deciding whether a defendant's absence is voluntary is whether the defendant knew the proceeding would go forward in his absence. See Russell v. State, 665 So.2d 994 (Ala.Crim.App. 1995). It is not, however, incumbent on the court to expressly warn the defendant of the factors of Rule 9.1(b), Ala.R.Crim.P., where the defendant has appeared at the commencement of trial and it can reasonably be assumed that the defendant knew he had a right to be present. See Committee Comments, Rule 9.1, Ala.R.Crim.P. See also Russell, 665 So.2d at 996.
Brown was present on Monday, December 13, 1999, when the venire was qualified and the jury was selected. He was also present when the trial court announced that the trial would be adjourned until Wednesday, December 15, 1999, at 1:30 p.m. The record indicates that the trial court stated:
 "Ladies and gentlemen, for those of you whose names have been called you've been selected to serve as jurors in the case of State v. Anthony Keith Brown. As I told you earlier the trial of this case will not start right away. So with that instruction you are excused to be back here Wednesday afternoon at 1:30 unless I tell you otherwise by jury phone line."
The trial court then adjourned for the day. (R. 69.)
Clearly when the jury has been selected and the jury recessed for the day, Brown's trial had commenced; it was reasonable for him to expect that his trial would continue as the trial court instructed. Therefore, we conclude that he knew of his right to be present and that he knew that the trial would continue in his absence. Brown voluntarily waived his right to be present at his trial under Rule 9.1(b)(ii), Ala.R.Crim.P., by escaping custody. (R. 169-170.) "A defendant cannot invite error by his conduct and later profit by the error." Timmons v. State, 487 So.2d 975,979 (Ala.Crim.App. 1986). Under these facts, the trial court did not err in conducting Brown's trial without his being present.
 II.
Brown contends that the stop that led to his arrest was unlawful. Specifically, he argues that because the law-enforcement officer who stopped him did not issue a citation during the stop, the officer did not have probable cause to stop his vehicle.
 "The Fourth Amendment guarantees `[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a `seizure' of `persons' within the meaning of the provision. An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."
Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772,135 L.Ed.2d 89 (1996) (citations omitted). An officer who sees a person committing a traffic offense has probable cause to stop that person for the traffic offense. Smith v. State, *Page 224 606 So.2d 174, 176 (Ala.Crim.App. 1992). This showing of probable cause can be made through the officer's testimony. Id.
Here, Officer Perkins testified that he saw the sport utility vehicle Brown was driving stop at a green light, weave in the right lane, and then turn left on a red light. (R. 84-85.) Failure to obey a traffic-control device is a violation of §§ 35-5A-3 and 32-5A-31, Ala. Code 1975. Thus, Officer Perkins had probable cause to believe a traffic violation had occurred and to stop Brown's vehicle. We reject Brown's contention that because Officer Perkins did not issue a traffic citation the stop was unlawful. Probable cause to stop Brown's vehicle was established when Officer Perkins witnessed the traffic offense. The failure to issue a traffic citation does not negate Officer Perkins's probable cause to stop Brown's vehicle. Based on the record before us, the initial stop of Brown's vehicle was legal. Adams v. State,815 So.2d 574 (Ala.Crim.App. 1999).
 III.
Brown contends that the trial court erred in denying his motion to suppress his statement because, he says, he was under the influence of drugs when police questioned him. This court stated in Seawright v.State, 479 So.2d 1362, 1367 (Ala.Crim.App. 1985):
 "`In considering whether a confession or inculpatory statement is voluntarily made, the trial judge need only be convinced from a preponderance of the evidence.'"
When a defendant claims his statement was involuntary because he was under the influence of drugs when he made it, "it must be shown that the mind of the defendant was substantially impaired when the confession was made." Moore v. State, 488 So.2d 27, 30 (Ala.Crim.App. 1986).
Nothing in the record indicates that Brown's mind was "substantially impaired" when he was questioned by law-enforcement officers. Officer Keith Terry of the Florence Police Department questioned Brown, and although Brown maintained that he had taken morphine and heroin in the hours before questioning, Terry saw no evidence that "would make [him] think [Brown] wasn't aware of what's going on." (R. 411.) Brown gave a detailed statement. Brown was given his Miranda warnings twice and both times he indicated that he understood those warnings. (R. 368, 380.) Indeed, the detail in Brown's confession and his statement that he understood his Miranda warnings indicates that he was cognizant of his surroundings and that his mind was not "substantially impaired." Brown has presented no evidence to support his argument that his statement was involuntary because he was under the influence of drugs when he made it; therefore, the trial court did not err in denying his motion to suppress.
 IV.
Brown contends that the trial court erred by admitting into evidence testimony of his escape from custody. (R. 170.)
It is within the trial court's discretion whether to admit relevant evidence. "The determination of whether evidence is relevant and therefore admissible rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion." Jennings v. State, 513 So.2d 91, 95 (Ala.Crim.App. 1987). Rule 404(b), Ala.R.Evid., provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, *Page 225 
 such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
Rule 403, Ala.R.Evid., provides:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
"Any conduct or declaration of a person having relation to the offense he is suspected of or charged with, indicating a consciousness of guilt, is admissible evidence against him." Sparks v. State, 376 So.2d 834, 843
(Ala.Crim.App. 1979). "The flight of the accused is admissible whether it occurred before or after his arrest." Sartin v. State, 615 So.2d 135,137 (Ala.Crim.App. 1992), quoting C. Gamble, McElroy's Alabama Evidence
§ 190.01(1) (4th ed. 1991) (citations omitted).
Brown's escape from custody can be inferred as showing a consciousness of guilt. Ex parte Clark, 728 So.2d 1126, 1136 (Ala. 1998). Based on caselaw and Rule 404(b), Ala.R.Evid., we conclude that the trial court did not abuse its discretion by admitting into evidence testimony about Brown's escape from custody.
 V.
Brown contends that the trial court erred in adjudging him guilty of burglary, theft of property, and receiving stolen property because, he says, his convictions for theft and receiving stolen property are lesser-included offenses of the burglary convictions and he should not be punished separately for those offenses.
It is proper for a defendant to be convicted of both burglary and theft where the crimes arose from the same transaction. Vason v. State,574 So.2d 860, 863 (Ala.Crim.App. 1990).
Section 15-3-8, Ala. Code 1975, provides:
 "Any act or omission declared criminal and punishable in different ways by different provisions of law shall be punished only under one of such provisions, and a conviction or acquittal under any one shall bar a prosecution for the same act or omission under any other provision."
The Supreme Court, in Ex Parte McKelvey, 630 So.2d 56, 57 (Ala. 1992), said:
 "In accordance with [§ 15-3-8, Ala. Code 1975], the appellate courts of this state have consistently held that where a defendant is charged with both burglary and theft (or larceny) arising from a transaction that is the foundation for both charges, the defendant may only receive one punishment."
A court may sentence a defendant for burglary and theft if the sentences are made concurrent, rather than consecutive. Pardue v. State,571 So.2d 320, 330 (Ala.Crim.App. 1989).
Brown was convicted of third-degree burglary and first-degree theft of the Ken Nix Pharmacy, which occurred on January 21, 1999. (Counts 9 and 11). The trial court ordered consecutive sentences of life imprisonment for these convictions. While Brown can be convicted of both burglary and theft, he can receive only one punishment. The trial court may either set aside one of Brown's convictions or order the sentences to run concurrently. Ex parte McKelvey, 630 So.2d at 57-8. *Page 226 
Likewise, Brown was convicted for second-degree theft and third-degree burglary of the Northgate Pharmacy, which occurred on February 28, 1999. (Counts 13 and 15). The trial court ordered consecutive sentences of life imprisonment for these convictions. As in Ex parte McKelvey, supra, the trial court may either set aside one of Brown's convictions or order the sentences to run concurrently.
With regard to Brown's convictions for third-degree burglary (Count 7) of the Ken Nix Pharmacy on December 30, 1999, and second-degree receiving of stolen property (Count 6), we conclude that Brown's conviction for second-degree receipt of stolen property must be set aside and the sentence vacated.
In Ex parte Thomas, 445 So.2d 939, 940-41 (Ala. 1983), this Court stated:
 "The dispositive issue [raised by Thomas] is whether the evidence presented by the state which proved Thomas came into possession of the property described in the indictment solely by burglarizing a house precluded a conviction of receiving stolen property. We hold that it did.
". . . .
 ". . . The undisputed testimony here is: that a house was burglarized and a television set stolen; that the defendant admitted that he broke into the house, took a television, and transported it to his house; and that the stolen television set was found in his house. On the basis of these facts and the foregoing discussion, we hold that the defendant cannot be convicted of receiving stolen property."
A similar issue was discussed in Mills v. State, 581 So.2d 1126, 1127
(Ala.Crim.App. 1987):
 "The appellant alleges that because the evidence tended to show that he actually participated in the burglary and theft, his conviction for receiving stolen property was contrary to the law. Where the evidence is undisputed that the appellant committed the theft, he cannot be convicted of receiving the same stolen property from that theft. Ex parte Thomas, 445 So.2d 939 (Ala. 1983)."
From the evidence presented, the jury concluded that Brown committed the burglary of the Ken Nix Pharmacy on December 30, 1998. In a statement offered into evidence by the state, Brown detailed his involvement in the burglary and theft of the drugs committed on December 30, 1998. Thus, the evidence unequivocally indicated that Brown was involved in the burglary and that he stole the drugs from the pharmacy.
The drugs taken during this burglary are the subject of second-degree-receiving-stolen-property conviction. The offense of receiving stolen property requires that the defendant, with knowledge of the facts and without intent to return the property to the owner, bought or obtained property that had been stolen by some person other than the defendant. George v. State, 410 So.2d 476 (Ala.Crim.App. 1982) (one cannot be convicted of receiving stolen property when the evidence establishes that he participated in the theft). Therefore, Brown cannot be convicted of second-degree receiving stolen property; the judgment of the trial court is reversed as to that conviction. Cf. The People v.Jimmy Lee Stewart, 185 Cal.App.3d 197, 202 (1986).
 VI.
Brown contends that the State's evidence was insufficient to sustain his convictions. This issue, having been raised first on appeal, was not preserved for our review. Review by this court is *Page 227 
limited to matters properly raised before the trial court. Carter v.State, 627 So.2d 1027, 1028 (Ala.Crim.App. 1992). The record indicates no objection was made at trial concerning the sufficiency of the evidence. (R. 421.) Although Brown raised this issue in his pro se motion for a new trial, his motion was untimely. A motion for a new trial must be filed within 30 days of "pronouncement of sentence." Rule 24.1, Ala.R.Crim.P. Wilson v. State, 659 So.2d 152 (Ala.Crim.App. 1994). Brown was sentenced April 18, 2000, and did not file his motion for a new trial until June 16, 2000. Brown's motion for a new trial was therefore untimely and preserved nothing for our review.
This cause is remanded to the trial court to vacate its judgment with regard to Count 6 in the indictment and for proper sentencing as set out in Part V of this opinion. The trial court shall take all necessary action to ensure that the circuit clerk makes due return to this court at the earliest possible time and within 56 days of the release of this opinion. The return to remand shall include a new sentencing order and a transcript of the proceedings.
REMANDED WITH DIRECTIONS.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612,16 L.Ed.2d 694 (1966).