The appellant, Ty William Ryan, was convicted of burglary in the first degree, a violation of § 13A-7-5, Ala. Code 1975, of theft of property in the first degree, a violation of § 13A-8-3, Ala. Code 1975, and of theft of property in the second degree, a violation of § 13A-8-4, Ala. Code 1975. He was sentenced, as a habitual offender with five prior felony convictions, to life imprisonment without the possibility of parole for the burglary conviction, to life imprisonment for the first-degree-theft-of-property conviction, and to 20 years' imprisonment for the second-degree-theft-of-property conviction.
The evidence presented at trial indicated the following. On November 21, 2001, Paul Jenkins and his wife went to a house they owned in Clay County; they often used the house when hunting. When they arrived, Mrs. Jenkins noticed that the hot water heater had been left on and that the toilet had not been flushed. Upon further investigation, the Jenkinses discovered that all of the drawers in the house had been "rambled through," and that the cushions from the sofa had been placed on the floor, and it appeared as if someone had slept on them (giving rise to the burglary charge). (R. 33.) When Jenkins realized that someone had broken into the house, he went outside to check on his Yamaha brand four-wheeler and discovered that it was missing (giving rise to the first-degree-theft-of-property charge). (R. 33-34.) The Jenkinses then notified the police about the break-in. In addition to the four-wheeler, Jenkins testified that the following items were missing from the house: a 12-gauge shotgun and a .22 Magnum rifle (giving rise to the second-degree-theft-of-property charge); several hunting knives and kitchen knives; a saddlebag for his four-wheeler; ammunition; and some items from the refrigerator.[1] (R. 34-38.) *Page 1241 
Tony Knight, a patrol officer with the Lineville Police Department, responded to the call. Officer Knight spoke with the Jenkinses, inventoried the missing items, and filled out an incident and offense report. Shortly thereafter, three other officers from the Lineville Police Department — Investigator Derrick Forbes, Officer Cris Nall, and Officer Stephen Caldwell — arrived at the scene. They concluded that the perpetrator had entered the house through a side window where the screen was missing.
Later that night, the officers followed tire tracks on the ground that began behind the house and found Jenkins's four-wheeler. The following day, November 22, 2001, Officer Knight and Investigator Forbes followed the same tire tracks and discovered Jenkins's guns and several other items in a heavily wooded area of the property adjacent to the Jenkins's house. While Officer Knight was securing the area, a man, later identified as Ryan, walked by with a shotgun. (R. 71.) Officer Nall, who was nearby, also saw Ryan and called out to ask what he was doing. When Ryan came up to Officer Nall, Ryan placed the shotgun under his own chin, as if he were going to shoot himself. Officers Knight and Ryan eventually talked Ryan into surrendering the shotgun, and he was then arrested. Ryan was carrying saddlebags, containing shotgun shells, around his neck, and had a knife sticking out of his pocket.
Ryan was taken into custody and brought to the Lineville police station where he was read his Miranda[2] rights. Ryan acknowledged that he understood his rights, and he signed a waiver-of-rights form. Ryan then gave a written statement to the police confessing that he had broken into the Jenkinses' house, spent the night there, and taken the four-wheeler, the guns, the knives, and several other items.
 I.
On appeal, Ryan contends that the trial court erred in denying his motion for a judgment of acquittal, made at the close of the State's case, because, he says, the State failed to establish a prima facie case of burglary in the first degree. Specifically, Ryan asserts that the State failed to establish that the Jenkinses' hunting house was a "dwelling" under § 13A-7-1(3), Ala. Code 1975, for purposes of proving burglary in the first degree under § 13A-7-5, Ala. Code 1975.
At trial, Jenkins testified regarding the frequency with which he and his wife went to the hunting house. Jenkins stated that he would "go about every other day except Sundays" during hunting season, and that he went there often in the summers as well to garden. (R. 31.) He explained that because he was a cardiology patient, he attended cardiac rehabilitation on Mondays, Wednesdays, and Fridays, but that he would hunt on Tuesdays, Thursdays, and Saturdays during hunting season on the property in Clay County. (R. 31.) At the time of the incident, the house was furnished, there was food in the refrigerator, and the plumbing, electricity, and *Page 1242 
heating were operating. (R. 32, 44, 53.) Jenkins stated that he and/or his wife would sleep at the hunting house at least once a week year-round. (R. 51.)
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'"Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quotingFaircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd,471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunnv. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v.State, 602 So.2d 462, 464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'"Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Wardv. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040,1042 (Ala. 1978).
Section 13A-7-5, Ala. Code 1975, provides, in pertinent part:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [the] dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon;. . . ."
Section 13A-7-1(3), Ala. Code 1975, defines "dwelling" as a "building which is used or normally used by a person for sleeping, living or lodging therein."
In Foreman v. State, 546 So.2d 977 (Ala.Crim.App. 1986), this Court noted:
 "The legislature defined `dwelling' as '[a] building which is used or normally used by a person for sleeping, living or lodging therein.' Ala. Code (1975), § 13A-7-1(3). The Commentary to § 13A-7-1
states that the term dwelling `is restricted to buildings used for sleeping and living.' Thus, we can only conclude that the legislature intended that the term `dwelling' be construed narrowly to encompass only those areas `normally used for sleeping, living or lodging' and not be given the common law construction whereby outbuildings within the curtilage of the dwelling proper would be included."
546 So.2d at 981. See also Woods v. State, 568 So.2d 331, 333
(Ala.Crim.App. 1990) ("Under current law, the premises must be a `dwelling,' see § 13A-7-5(a), `which is restricted to buildings used
for sleeping and living.' §§ 13A-7-5 through 13A-7-7, Commentary at 233 (emphasis added [in Woods])."); and Ward v. State, 701 So.2d 53
(Ala.Crim.App. 1996). "Normally" is defined in Black's Law Dictionary
1059 (6th ed. 1990) as follows: "[a]s a rule; regularly; according to rule, general custom, etc."[3] As the Commentary to § 13A-7-1
notes, *Page 1243 
the statutory definition of a dwelling "approximates" the Alabama common-law definition. In 3 C. Torcia, Wharton's Criminal Law § 325 (15th ed. 1995), it is stated that at common law "[a] person `lives' in a structure if he uses it regularly for the purpose of sleeping." In R. Perkins and R. Boyce, Criminal Law, p. 259 (3d ed. 1982), the authors noted:
 "[c]ertain it is that the dweller and his entire household may be away for months, without depriving the house of its character as his dwelling. It was ruled in the 1500's, and often repeated since, that a man may have two dwellings at the same time actually used during alternate periods and that burglary may be committed in the one not being used at the moment, — such as a winter home in the city and a summer cottage in the mountains."
(Footnotes omitted.) And in Ex parte Vincent, 26 Ala. 145, 152 (1855), referenced in the Commentary to § 13A-7-1, the Alabama Supreme Court stated that at common law a building could be deemed a dwelling, in a burglarious sense, if it is one in which a person "usually or often" lodges at night. See also Moore v. State, 35 Ala. App. 95, 44 So.2d 262
(1950) (construing T. 14, § 86, 1958 Code); and Hamilton v. State,354 So.2d 27 (Ala.Crim.App. 1977) (construing T. 14, § 86, Code of Alabama 1940 (Recomp. 1958)).
It is clear from Jenkins's testimony that the hunting house satisfies the definition of "dwelling" in § 13A-7-1. The house was used regularly for lodging during hunting trips, and it had hot water, heat, electricity, furnishings, including a bed, and a stocked refrigerator. Contrary to Ryan's contention, there is no language in § 13A-7-1
that can reasonably be interpreted as requiring uninterrupted daily use of a building for it to be classified as a dwelling. Although older cases sometimes discuss the common-law definition of dwelling in terms of "permanent use," see, e.g., Ex parte Vincent, supra; Reeves v. State,245 Ala. 237, 16 So.2d 699 (1944); and Russell v. State,36 Ala. App. 19, 52 So.2d 230 (1951), it appears that those discussions pertained to the common-law requirement that a building, to qualify as a dwelling, not be one that had been abandoned by its owner. See, e.g.,Hamilton v. State, supra; Olds v. State, 19 Ala. App. 162, 95 So. 780
(1923); Wharton's Criminal Law, supra, at § 325. See also Black's LawDictionary, 1139 (6th ed. 1990) defining "permanent abode" as "[a] domicile or fixed home, which the party may leave as his interest or whim may dictate, but which he has no present intention of abandoning."[4]
The trial court correctly ruled that the State's evidence sufficiently established that the Jenkinses' hunting house was a "dwelling" for purposes of the first-degree burglary statute. The trial court did not err in denying Ryan's motion for a judgment of acquittal.
 II.
Ryan also contends that the trial court erred in failing to give the jury an instruction on burglary in the second degree as a lesser-included offense to the offense of burglary in the first degree.
During the charge conference at the conclusion of the State's case, Ryan requested that the trial court instruct the *Page 1244 
jury on the offense of burglary in the second degree as a lesser-included offense to burglary in the first degree. (R. 120-25.) After a lengthy discussion regarding whether the Jenkinses' hunting house was a "dwelling" or a "building," the trial court denied the request. Just before the court's oral charge, Ryan again requested a charge on burglary in the second degree. (R. 149-50.) The following colloquy then occurred:
 "THE COURT: You're requesting burglary second on our [previous] discussions of whether this particular dwelling was a building versus a dwelling?
"[Ryan's counsel]: Yes, sir.
 "THE COURT: And I've already determined as a matter of law that this was a dwelling.
 "[Ryan's counsel]: And, therefore, the motion is denied, Your Honor?
"THE COURT: It's denied."
(R. 150.) (Emphasis added.) At the conclusion of the jury charge, Ryan once again requested the second-degree burglary instruction. The trial court noted Ryan's exception to the court's refusal to give the charge and stated the following for the record:
 "THE COURT: . . . And for the record, the exception is noted to the Court's not giving burglary in the second degree as a lesser included offense dealing with dwelling versus building. The Court considered that, considered as a matter of law that there was no evidence which would indicate that the dwelling in this case was anything other than a dwelling. It was definitely a building, but it was a dwelling. Okay."
(R. 183-84.) (Emphasis added.)
A defendant has the right to request a jury charge based upon any material hypothesis that the evidence tends to establish, and where there is a reasonable theory to support a requested charge as a lesser-included offense, a trial court's refusal to give the charge is reversible error. See Ex parte Chavers, 361 So.2d 1106 (Ala. 1978); Miller v. State,675 So.2d 534 (Ala.Crim.App. 1996). A court may, however, properly refuse to charge on a lesser-included offense "(1) when it is clear to thejudicial mind that there is no evidence tending to bring the offensewithin the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury." Chavers, 361 So.2d at 1107 (emphasis added). Furthermore, § 13A-1-9(b), Ala. Code 1975, states that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
In this case, no evidence was presented that would support the giving of an instruction on burglary in the second degree. The trial court made the determination as a matter of law that the Jenkinses' house was, in fact, a "dwelling," thereby negating the need to charge the jury on second-degree burglary, which deals with the burglary of a "building" rather than a "dwelling." This ruling was correct because no evidence was presented to indicate that the Jenkinses' house was anything other than a dwelling and, therefore, there was no evidence to support a charge on second-degree burglary. Thus, the trial court did not err in refusing to give Ryan's requested instruction on burglary in the second degree.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] Ryan's convictions for burglary and for theft of property in the second degree arose from the same act or omission pursuant to § 15-3-8, Ala. Code 1975. "It is proper for a defendant to be convicted of both burglary and theft where the crimes arose from the same transaction."Brown v. State, 821 So.2d 219, 225 (Ala.Crim.App. 2000). However, it is well settled that "[i]n accordance with this statute, . . . where a defendant is charged with both burglary and theft (or larceny) arising from a transaction that is the foundation for both charges, the defendant may receive only one punishment." Ex parte McKelvey, 630 So.2d 56, 57
(Ala. 1992) (footnote omitted). In this case, Ryan received concurrent sentences for his convictions. "A court may sentence a defendant for burglary and theft if the sentences are made concurrent, rather than consecutive." Brown, 821 So.2d at 225.
[2] Miranda v. Arizona, 384 U.S. 436 (1966).
[3] The term "normal" is defined in Black's Law Dictionary 1083 (7th ed. 1999) as follows: "[a]ccording to a regular pattern; natural[;] . . . [a]ccording to an established rule or norm."
[4] "Permanent abode" is defined in Black's Law Dictionary 501, 1160 (7th ed. 1999), under the term "domicile," as "[t]he place at which a person is physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." *Page 1245